Johnnie Calvin ARCHIE, Appellant,

v.

The STATE of Texas, Appellee.

No. 48773.

Court of Criminal Appeals of Texas.

July 24, 1974.

John J. C. O'Shea, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., G. Thomas Cannon, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellant was convicted in a trial before a jury of murder without malice. The court assessed punishment at three (3) years' imprisonment.

The appellant does not challenge the sufficiency of the evidence; therefore, only a brief recitation of the facts will be necessary. On February 28, 1970, the deceased, Louis Respondik, went to the residence of the appellant and his ex-wife, Mary Jo Archie. The appellant and the deceased drank beer and whiskey throughout the day and argued constantly. Both persons were known to have a drinking problem. That evening when the argument became very heated, Mary Jo Archie ran from the house. As she left, she thought she heard the appellant say, "I am going to shoot you, Louis." As Mrs. Archie was running to the front porch she heard a gunshot and, upon walking around to the back of the house, she found the deceased lying in the yard. The police also found the deceased lying in the back yard, with a fatal bullet wound in the chest. Shortly thereafter the appellant was found in his bedroom holding a rifle and was arrested. The rifle had one spent cartridge in the chamber.

In his first ground of error, appellant contends he was denied his right to a speedy trial under the Sixth Amendment to the United States Constitution as applied to the Fourteenth Amendment.

Appellant was first arrested at the scene of the shooting and was indicted on March 4, 1970. He was subsequently reindicted on February 9, 1971 and again on January 3, 1973, for the same offense. Trial was finally had on April 24, 1973. A period of over three years had elapsed from the time of appellant's arrest and his trial.

■ In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971), the United States Supreme Court adopted a "balancing test" for the determination of the speedy trial right in which the conduct of both the prosecution and defendant is weighed. Such a test requires the courts to approach speedy trial questions on an ad hoc basis. The guidelines set out by the Supreme Court to be considered are (1) the length of delay; (2) the reasons for delay; (3) the defendant's assertion or non-assertion of his rights, and (4) prejudice to the defendant resulting from the delay. See also Turner v. State, Tex.Cr. App., 504 S.W.2d 843; McCarty v. State, Tex.Cr.App., 498 S.W.2d 212; Haas v. State, Tex.Cr.App., 498 S.W.2d 206; McKinney v. State, Tex.Cr.App., 491 S.W.2d 404; Courtney v. State, Tex.Cr.App., 472 S.W.2d 151.

■ As to the length of the delay, this is measured from the time the defendant became the accused, and is necessarily dependent upon the facts. Haas v. State, supra; McCarty v. State, supra. In the instant case, three years and two months elapsed from the date of appellant's arrest (on the date of the offense) to the trial. Such a delay is not, per se, a deprivation of appellant's right to a speedy trial, although it is a fact requiring further consideration of appellant's claim. Barker v. Wingo, supra; McCarty v. State, supra; Courtney v. State, supra.

Appellant does not allege, and the record does not refect, any deliberate effort by the State to delay this trial. No motions for continuance by either party are reflected. The necessity to reindict appellant for this offense is cited as the reason for delay. No complaint of such delay, or of such reindictments, was made by appellant in the trial court. Appellant took no action in the trial court to speed up the criminal process.

A defendant who fails to demand a speedy trial does not forever waive his Sixth Amendment right. The better rule is that the defendant's assertion of, or failure to assert, his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of his right. Haas v. State, supra. Appellant made no motion for a speedy trial, or any semblance of a request for a trial, prior to the commencement of the instant one. We conclude that appellant failed to assert his right to a speedy trial by not making diligent efforts. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; McCarty v. State, supra; Haas v. State, supra.

Prejudice should be assessed in light of the interests which the speedy trial was designed to protect. Although proof of "actual prejudice" is not required in Texas, the burden is on the defendant to make some showing of prejudice caused by the delay. McCarty v. State, supra; Harris v. State, Tex.Cr.App., 489 S.W.2d 303; Courtney v. State, supra.

Appellant was not incarcerated during the three years' delay, having been released on bail shortly after his arrest. He makes a rather weak claim that the delay aggravated an existing drinking problem which caused a substantial interference with his ability to defend himself and properly assist his counsel during the trial. He makes no showing or any specific contention of prejudice.

Applying the balancing test of Barker v. Wingo, supra, we find no denial of appellant's right of a speedy trial. His first ground of error is overruled.

In his second ground of error, the appellant contends the trial court erred in not finding as a matter of law that State's witness Mary Jo Archie was the common-law wife of appellant, thereby rendering her testimony for the State inadmissible. See Article 38.11, Vernon's Ann.C.C.P.

The trial court, out of the presence of the jury, examined the witness to determine the admissibility of her testimony. The appellant also testified at this proceeding. During the hearing the following was elicited on direct examination by the State from Mary Jo Archie:

"Q Okay. When did you all get divorced?

"A November 3, 1967.

"Q Okay. You haven't been married since then, is that right?

"A No sir, we haven't been married."

On cross-examination the following was elicited:

"Q When—when you and your—did you hold your—Johnnie Calvin Archie as your husband to the public at that time prior to this tragedy.

"A No, sir, I didn't, I did say my ex-husband, I always called him that after my divorce."

The trial court found that the relationship of common-law marriage was not established, and that the witness was not precluded from testifying due to the husband and wife privilege. However, the trial court further charged the jury on the issue of whether the witness's testimony was privileged by fact of a common-law marriage and instructed the jury that if it found that the relationship of common-law marriage existed between these parties, the testimony of Mary Jo Archie should be disregarded. See Krzesinski v. State, 169 Tex.Cr.R. 178, 333 S.W.2d 149; Welch v. State, 151 Tex.Cr.R. 356, 207 S.W.2d 627.

There are three essential elements of common-law marriage: (1) An agreement presently to become man and wife; (2) a living together pursuant to the agree-

ment and cohabitation as husband and wife; and (3) a holding out of each other to the public as husband and wife. Gary v. Gary, 490 S.W.2d 929 (Tex.Civ.App.—Tyler, 1973, writ ref'd. n. r. e.) While there may have been a living together in cohabitation for a period of about four or five months, it is clear from the record the elements required in a common-law marriage were not met in the present case. Shields v. State, Tex.Cr.App., 402 S.W.2d 761.

Appellant's second ground of error is overruled.

In his third ground of error, the appellant contends the trial court erred in not striking the testimony of Justice of the Peace LeCroy due to a fatal variance between the name of the deceased as testified by Judge LeCroy and the name of the deceased in the indictment. Judge LeCroy, a witness for the State, testified on cross-examination that he had entered the last name of deceased as "Respondek" in his death certificate. The deceased's name as appeared on the indictment is Respondik.

The death certificate was not introduced in evidence nor was it relied on for any purpose by the State. Throughout the statement of facts deceased's name is spelled "Respondik" as it is in the indictment, and the record establishes such to be the correct spelling.

The appellant could not have been misled by this error in the death certificate. Christopher v. State, Tex.Cr.App., 479 S. W.2d 281. Furthermore, we find the names to be idem sonans. Ross v. State, Tex.Cr.App., 496 S.W.2d 78; Raseley v. State, Tex.Cr.App., 470 S.W.2d 899; Smith v. State, Tex.Cr.App., 468 S.W.2d 824; Mounce v. State, Tex.Cr.App., 432 S.W.2d 104.

No error is presented.

The judgment is affirmed.

Opinion approved by the Court.