**Limmie Daniel PHILLIPS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60716.**

Court of Criminal Appeals of Texas, Panel No. 1.

Jan. 5, 1983.

Rehearing Denied June 8, 1983.

**398**

Robert C. Bennett, court appointed, Houston, for appellant.

Carol S. Vance and John B. Holmes, Jr., Dist. Attys., Calvin A. Hartmann, Winston E. Cochran, Jr., and Rusty Hardin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

## OPINION

ROBERTS, Judge.

A jury convicted appellant of rape, and the trial court sentenced him to ten years' confinement. Before trial, appellant filed a motion to dismiss the indictment, contending that the State had intentionally or negligently deprived him of his constitutional right to a speedy trial and to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. After a hearing, the trial court acknowledged that the particular facts of the case presented a unique and substantial question, but denied the motion, saying: "I think it would be good for the jurisprudence of the State to have a decision on it if that ever became necessary, and because of that feeling, I will overrule your motion."

We agree that the speedy trial issue here is important, involving as it does not only a lengthy delay between the time of indictment and the time of trial, but over a year's delay between the return of the indictment and the time appellant even became *aware* of the accusations against him. Accordingly, we turn now to an extended discussion of appellant's claim, one which indeed requires us to "engage in a difficult and sensitive balancing process." *Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972).

### THE RELEVANT FACTS

As the State indicates in its brief, the chronology of events in this case was as follows:

1. The offense occurred on May 25, 1976;

2. Appellant was placed in federal custody on June 20, 1976, for an unrelated crime;

3. On July 2, 1976, appellant entered pleas of guilty to two unrelated state offenses, the sentence in each of these to run concurrent with the federal conviction;

4. On October 7, 1976, an indictment was returned in cause number 252,282 for the offense alleged in the instant case;

5. Capias was issued in cause number 252,282 on October 7, 1976;

6. Capias in cause number 252,282 was not returned until December 1, 1977;

7. In November, 1977, appellant was released from the federal penitentiary to a community treatment center;

8. On November 29, 1977, appellant first learned of the warrant outstanding for his arrest on the rape charge in cause number 252,282;

9. On January 23, 1978, appellant was re-indicted in cause number 272,200, on the basis of the same offense alleged in cause number 252,282;

10. Appellant filed his motion to dismiss on March 2, 1978 and, after its denial, proceeded to trial on March 9, 1978.

## THE APPLICABLE LAW

■ *Barker v. Wingo,* supra, mandates that we employ a balancing test in which we are to consider four factors: the length of the delay, the reason for it, appellant's assertion of his speedy trial right, and the possible prejudice to appellant because of the delay. *Accord., Turner v. State,* 545 S.W.2d 133 (Tex.Cr.App.1976); *Grayless v. State,* 567 S.W.2d 216 (Tex.Cr.App.1978); *Phipps v. State,* 630 S.W.2d 942 (Tex.Cr. App.1982).

## LENGTH OF DELAY

■ "In determining whether a speedy trial has been denied, the length of delay is measured from the time the defendant was accused." *McCarty v. State,* 498 S.W.2d 212, 214 (Tex.Cr.App.1973), citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In this case approximately seventeen months passed between the time appellant was first indicted and the time of trial.[1] Although there "is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial in all cases," *Grayless v. State,* supra, at 220, a seventeen month delay is sufficient to raise the issue. *Barker v. Wingo,* supra.

## REASON FOR DELAY

At the pretrial hearing, Captain John Logan of the Harris County Sheriff's Department testified that his office had received the original capias on October 7, 1976, but that it had been "receipted on the computer" as coming from the 179th District Court rather than the 183rd District Court, "because the computer read out 179th and not the 183rd. . . ." As a result of this inadvertent filing, and also because "there was no descriptives [sic] whatsoever" on the capias by which appellant could have been located, according to Logan, the capias remained unserved. Captain Logan did admit, however, that "further steps" such as checking with the district attorney were not taken.[2]

Gene Nettles and W.F. Roberts were the prosecuting attorneys in charge of appellant's case. Nettles testified that the "rap sheet" in appellant's file showed that appellant had previously entered two guilty pleas in the 183 District Court and that he had been assessed penitentiary time. Nettles however, did not receive the rap sheet until

1. The record shows that on February 6, 1978, appellant and the State agreed to a March 7, 1978 trial setting. We are unable to determine when appellant's trial counsel, who also represents him now, first undertook appellant's defense. Since appellant did not learn of the charge against him until late November, 1977, and since he was not re-indicted until late January, 1978, however, we do not attribute much significance to this agreed setting. Even if we assume that the State was ready for trial on February 6, 1978, and tax appellant for the delay from that point, the total delay would still be some sixteen months. When we later discuss appellant's assertion of his right, however, we will have more to say of the interval between late November, 1977, and the time of trial.

2. Captain Logan himself was not the person to whom the capias had been given for service. That person, Bill Keith, did not testify, but Logan had talked with him about the failure to serve appellant.

after appellant was arrested in December of 1977; until then, he said, he had a "no arrest" case and was unable to discover appellant's whereabouts. W.F. Roberts, the prosecutor in charge of the case prior to September 1, 1977, agreed that he recalled "exasperating [sic] all possible efforts" to locate appellant. On the other hand, he conceded that an attempt to solve a "no arrest" problem would include "looking for his rap sheet to see if they may have an address or a disposition of some previous case on it." Roberts was "pretty sure" that appellant's rap sheet was in the file when he had it.

From the above, we conclude that the State's failure to notify the appellant and afford him the right to demand a speedy trial was not intentional. Nevertheless, the speedy trial right is too important to sanction neglect, even if nonwilful. On the state of the record before us, we believe that appellant's case was handled negligently. It appears that the district attorney's office had the information in its own files necessary to find appellant, but did not.[3] Moreover, despite protestations that all possible steps were taken, the record does not reflect what those steps were. As we pointed out in *Turner,* supra, "the burden of excusing the delay rests with *the State* and . . . in light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed." *Id.* at 137–138 (Emphasis added).

In reaching this conclusion, of course, we are mindful that a negligent delay is not to be equated with an intentional one. But, as the Supreme Court said in *Barker,* "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* at 407 U.S. 531, 92 S.Ct. at 2192.

## APPELLANT'S ASSERTION OF HIS RIGHTS

The important point here—and what makes the case unique[4]—is that for over a year appellant had no opportunity to assert his right, as he was unaware that he had been indicted. Obviously, appellant cannot be faulted for failing to assert a right he did not know he was entitled to, and thus we focus here on the period after November 29, 1977, when the State finally notified appellant of the charge against him.

We immediately reject the State's assertion based on *Tatum v. State,* 505 S.W.2d 548 (Tex.Cr.App.1974), that appellant "waived" his claim because he did not file a motion for a speedy trial and did not attempt to mandamus the trial court. In *Tatum,* the appellant did not raise a speedy trial issue at all before trial, and "made no effort to put on evidence prior to trial . . . ." *Id.* at 550. In fact, the record there showed that Tatum had received one continuance, and sought another. Under those circumstances, we found that *Barker* balancing test did not bear out appellant's claim, but there was no talk of "waiver." While *Barker* says that failure to assert the speedy trial right is "entitled to strong evidentiary weight," the opinion makes it clear that even a total failure to insist on a speedy

---

3. The fact that Nettles did not have appellant's rap sheet until late 1977 does not absolve the State of responsibility. As the United States Supreme Court observed in another context, the "staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

4. Actually, at the time of the pretrial hearing, we had considered a similar case in *Swisher v. State,* 544 S.W.2d 379 (Tex.Cr.App.1976), *cert.* denied, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977). In *Swisher,* the appellant testified that after the magistrate at his examining trial had concluded that there was no probable cause for his arrest, he had moved out of state, believing the charges had been dismissed, only to find out four years later of a pending indictment. Unlike Swisher, however, appellant had no reason to believe charges had been brought, and was not, like Swisher, arrested on a fugitive warrant. *See also Flores v. State,* 625 S.W.2d 44 (Tex.App.—San Antonio, 1981).

trial is not *ipso facto* determinative. *Barker,* supra, 407 U.S. at 531–532, 92 S.Ct. at 2192; *Archie v. State,* 511 S.W.2d 942, 944.

■ On the other hand, the State is correct in observing that appellant took no action between November 29, 1977 and March 2, 1978. Moreover, when he did act, it was not to demand a speedy trial, but to move that the indictment be dismissed. In *McCarty v. State,* supra, we noted that while the appellant had filed numerous motions, "his prime object was not to gain a speedy trial, but was an attempt to have the charge against him dismissed." *Id.* at 215–216. Although a motion to dismiss notifies the State and the court of the speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *McCarty,* supra, at 216.

This is not to say, however, that asking only for dismissal will result in a "waiver," while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim. In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly. Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider.

■ In this case, as we have said, we do not know the exact point at which appellant first retained counsel,[5] and the record does not indicate what investigative efforts counsel undertook. We do know, however, that counsel discovered at some point that a co-defendant in the case, one Larry Modest, had died on Labor Day of 1977. As will be seen, Modest's death is one fact appellant relies on to show prejudice. Regardless of whether defense counsel thought this fact was enough to move for dismissal, rather than for a speedy trial, however, we see nothing to suggest that appellant deliber-

ately failed to move for a speedy trial because of tactical reasons. *Cf. Barker,* supra, at 534–36, 92 S.Ct. at 2194 (Evidence showed that Barker acquiesced in the delay, gambling on the acquittal of a co-defendant).

## PREJUDICE TO THE APPELLANT

■ In *Barker,* the Supreme Court identified three purposes behind the right to a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. at 2193. In considering the factor of prejudice, moreover, this court does not require proof of "actual prejudice," but only "some showing" that the delay has been prejudicial. *Archie v. State,* 511 S.W.2d 942, 944 (Tex. Cr.App.1974); *see also Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 182 (1973) (affirmative demonstration of prejudice not required) and *Davison v. State,* 510 S.W.2d 316, 319 (Tex.Cr.App.1974) (showing of prejudice not *sine qua non*).

■ In this case, the prejudice factor is especially difficult to judge, with much to be said on both sides. On the one hand, it was not until after November 29, 1977, that appellant's anxiety could have begun, because before then he was ignorant of the indictment. Similarly, appellant's incarceration in the federal penitentiary was not made more oppressive by the existence of the indictment because the federal authorities apparently knew nothing about it, there being no detainer. *Cf. Smith v. Hooey,* 393 U.S. 374, 375, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (outstanding state criminal charge may worsen federal prisoner's status).

■ On the other hand, we can hardly dismiss appellant's claim by saying that "where ignorance is bliss, 'tis folly to be wise." As in *Turner v. State,* supra, appel-

---

5. Appellant contacted another lawyer, not his present counsel, on or soon after November 29, 1977. After this lawyer verified that appellant was wanted, appellant surrendered himself and

posted a bond. The record does not reveal how appellant secured trial counsel, but trial counsel was appointed to represent appellant on this appeal.

lant here was "deprived of the possibility of receiving a sentence at least partially concurrent with his federal sentence...." *Id.* at 139.[6]

▉ More important, though, and indeed central to us, is the complete lack of an opportunity to prepare a defense until over a year after the indictment had been returned. As the Supreme Court said in *Smith,* supra, a person already incarcerated faces significant obstacles when confronted by new charges. *Id.* at 379–380, 89 S.Ct. at 577. If there is always the danger that witnesses will disappear or memories fade, how much greater is that danger where, because he does not know he is accused, a prisoner can take no action to thwart the impact of time? If he does not know of the accusation, he will have no reason to move for a speedy trial, no occasion to seek the taking of depositions, and indeed no motivation to initiate "his own investigative efforts to mitigate [the] erosive effects of the passage of time." *Smith,* supra, at 380, 89 S.Ct. at 578. In short, the potential danger inherent in any delay becomes even more hazardous when, as here, the danger is not even perceived.[7]

▉ Applying this principle to the instant case, we discover that through no fault of his own, appellant was unable to talk to one of the co-defendants, Larry Modest, to determine whether he might testify on his behalf. By the time appellant learned of the indictment, Modest had been dead approximately three months.[8] The State, by contrast, produced another codefendant, Jimmy Nalley, Jr., as one of its witnesses, pursuant to an agreement whereby all charges against him would be dismissed provided he "tell the truth," whether he testified for the State or the defense. The record is barren of any evidence of a similar offer having been made to Larry Modest. And while the State stresses that appellant did not testify that Modest *would* have testified for him, but only that he *might* have, we believe that the State misses the point: we will never know whether Modest would have testified for appellant, or testified at all,[9] but appellant never had the chance to find out. In effect, the State asks us to require proof of actual prejudice; not just that the prospective defense witness was a "material" witness, in the sense that he was believed to know about the facts of the offense, but that he would have definitely testified favorably for the defense. *Barker* does not require such a showing, however, and even if it did, we

**6.** Of course, even had appellant been tried shortly after he was indicted, the period of over-lap between sentences would not have been very much. In addition, appellant had no right to concurrent sentencing, which is up to the discretion of the trial court. Article 42.08, V.A.C.C.P. In view of the fact that appellant had already received the benefit of concurrent sentencing earlier (on July 2, 1976, when he entered into two guilty pleas), it might be doubted how the court would act. Nevertheless, as in *Turner,* the delay robbed appellant of any *possibility* of favorable action.

**7.** We note that one of the prime functions of the right to an indictment in felony cases, guaranteed by our constitution, is to provide notice to a presumptively innocent defendant. If notice comes too late, the effect can be the same as if no notice were given. In addition, we realize that many prospective defendants would undoubtedly want to be informed that they were in danger of being indicted, so that they might begin their preparation immediately. As discussed in *United States v. Marion,* supra, however, different considerations govern in cases of preindictment delay. Our deci-

sion rests on the speedy trial right that attaches once a defendant has been indicted.

**8.** The complaining witness also testified that she had "heard" that another person possibly implicated in the offense, Bubba Carrington, was dead. We do not know from this hearsay when he died, if he did, but he did not testify at the trial.

**9.** In *Barker,* the Supreme Court said without elaborating that if "witnesses die or disappear during a delay, the prejudice is obvious." *Id.* at 407 U.S. 532, 92 S.Ct. at 2193. In *United States v. Lane,* 465 F.2d 408 (5th Cir.1972), the court denied a speedy trial claim even though appellant's co-defendant had died during a delay. In Lane's case, however, the co-defendant had claimed a total memory lapse during a competency examination, making it "likely" that had he lived, he would not have given favorable testimony. *Id.* at 412. In addition, unlike appellant, Lane at least had the opportunity to talk to the co-defendant before his death.

could not say that where a defendant never had the chance to make the showing, he should be held to an impossible burden.

Finally, appellant testified at both the pre-trial hearing and at trial that because of the delay, he was unable to reconstruct his movements on the date of the offense. Appellant's wife testified that she had not been able to refresh her recollection of that day "by any records or talking with anyone else" or with her husband. While such testimony is, for obvious reasons, not conclusive, *Barker* teaches that proving memory loss is difficult "because what has been forgotten can rarely be shown." *Id.* at 532, 92 S.Ct. at 2193. Though we do not attach major significance to the testimony,[10] it is something we must take into account in the balancing process.

### CONCLUSION

In this case we find a seventeen month delay between indictment and trial, and over a year's delay between indictment and the time appellant learned that he had been accused. Although the delay was not intentional, as in *Turner v. State,* supra, the State offered "no tenable reason" for it, negligence not being a justification. By moving to dismiss the indictment, appellant did bring his claim to the attention of the trial court and the State; we find no evidence that appellant himself was taking advantage of the delay. Finally, appellant has made a showing of prejudice in that at least one possible witness, a co-defendant, died during the delay before appellant was even aware that his testimony might be crucial to his defense. In addition, because appellant was not promptly notified of the charge against him, he could not even begin to prepare his defense until some thirteen months after he was accused. On balance,

the State's action here deprived appellant of his sixth amendment right to a speedy trial.

Since *Barker* dictates that dismissal is the only suitable remedy for a violation of this right, the judgment[11] is reversed and the prosecution ordered dismissed.

DALLY, Judge, dissenting.

The majority weighs too heavily what it characterizes as the negligent handling of appellant's case, and in the circumstances of this case it also weighs too heavily the "prejudice" which it finds may have been caused to the appellant by the delay. The prosecution should not be dismissed.

### DENIAL OF STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

McCORMICK, Judge.

On original submission, a panel of this Court held that appellant was denied his constitutional right to a speedy trial. The panel concluded that, because of the lapse of time, appellant was prejudiced "in that at least one possible witness, a co-defendant, died during the delay before appellant was even aware that his testimony might be crucial to his defense."

In arriving at this result, the panel has speculated as to possible harm when the record fails to show that there was a viable defense which the dead witness would have supported. Nor does the record support a reasonable conclusion that the witness' testimony could have helped appellant prevail on that unknown defensive theory. A careful examination of the evidence does not support the conclusion that the absence of

---

10. Appellant admitted at trial that he and his wife did not try to track their activities in May of 1976 by "comparing it when your children got out of school." In addition, he conceded that he did not "attempt to track what [he] was doing during that period of time through [his] wife's job."

11. We note that although appellant was indicted for rape, the judgment recites that he was

indicted for "aggravated rape—second offender" and that he was convicted of "aggravated rape." While the indictment does contain an enhancement paragraph (alleging a 1968 conviction for assault with intent to rob), rape does not become aggravated by way of enhancement. Were it not for our disposition, we would feel obliged to reform the judgment. *See* Article 44.24(b), V.A.C.C.P.

the deceased co-defendant's testimony in any way prejudiced the appellant.

In reviewing the evidence, it must be kept in mind that appellant has never, either prior to, during, or after trial, asserted a defensive theory other than that he did not commit the offense.

In reviewing the speedy trial claim, the panel majority attempted to apply the balancing process of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors to be weighed in determining whether a defendant has been denied his speedy trial right are:

(1) length of delay;

(2) the reason for the delay;

(3) the defendant's assertion of his right; and

(4) prejudice to the defendant.

The Supreme Court regards none of the four factors as either a necessary or sufficient condition to the finding of a deprivation of speedy trial. Rather, the factors are to be considered together, and each case is to be judged on an ad hoc basis. *Barker v. Wingo,* 407 U.S. at 530, 533, 92 S.Ct. at 2192–2193. See also *United States v. Eight Thousand Eight Hundred and Fifty Dollars,* —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

The crucial factor is the fourth one. *Barker* designated three types of possible prejudice: (1) oppressive pre-trial incarceration; (2) anxiety and concern of the accused; and (3) a possibility that the defense will be impaired.

The first two forms of harm are not material factors in this cause. The appellant was already incarcerated in the federal penitentiary for a different offense, and he was simultaneously receiving credit for State prison incarceration on other convictions unrelated to the case at bar. As the panel majority noted, it is possible that the appellant might have benefited from overlap of the prior incarceration with the punishment in the present cause. On the other hand, the fact that the appellant had already been in prison for months may have affected the term of years assessed in the

appellant's favor. The trial court did find the enhancement paragraph true. Thus, the range of punishment applicable under V.T.C.A., Penal Code, Section 12.42(b), ranged up to life imprisonment, and the appellant's ten year term must be considered light.

The panel majority also recognizes that the appellant could not have had concern and anxiety over the original indictment since he did not know that such an indictment existed. If the appellant had any anxiety over this crime during this time, it was strictly due to a guilty conscience.

The decisive question is whether the delay impaired the appellant's defense. The alleged prejudice in this cause arose from the unavailability at trial of a co-defendant, Larry Modest, who died during the period of delay. The panel majority stresses that the appellant need not show actual prejudice as a result of Modest's absence, but that only "some showing" of harm is necessary. However, "some showing" is not satisfied by mere conjecture of possible defenses. *Archie v. State,* 511 S.W.2d 942, 944 (Tex.Cr.App.1974), cited by the panel majority, held that "a rather weak claim" was not sufficient, and further required that the defendant at least make a "specific contention of prejudice." The appellant was at least obliged to (1) present a specific defensive theory which Modest's testimony might support, and (2) show that there was a reasonable likelihood that Modest's testimony could have helped the appellant prevail on that defensive theory.

The appellant testified at the motion hearing that Modest would have been able to testify that the appellant was not present at the time the offense occurred. On cross-examination the appellant hedged slightly: "I didn't say I know he would have. I say he could have." However, the appellant never shifted his position that Modest's testimony would have gone to the defensive theory that the appellant was not present at the offense. There are several reasons why the appellant's speculation about Modest's testimony does not even constitute a prima facie showing of harm.

First, the appellant denied that he was ever with Modest on May 25, the date of the offense. Yet the appellant maintains that Modest could testify that the appellant was not present at the rape. Since, by the appellant's own admission, Modest would not be testifying as a regular alibi witness, i.e. stating that he was with the appellant at some other place, the appellant obviously is contending that Modest would acknowledge his own participation in the gang rape but deny the appellant's participation. That thesis is wholly implausible.

Obviously, Modest would have invoked his privilege against self-incrimination. If it did not happen on direct testimony, it certainly would have happened on cross-examination of Modest by the State. That being the case, it is likely that the trial court would have anticipated the appearance of the Fifth Amendment question during cross-examination and precluded Modest's direct testimony. See *Mendoza v. State*, 552 S.W.2d 444, 450 (Tex.Cr.App. 1977). The panel majority does not even mention the Fifth Amendment impediment to Modest's supposed testimony.

Second, even if Modest were to testify that the appellant was not present at the rape, such testimony would have to overcome testimony to the contrary by the complainant and by Jimmy Nalley, Jr., who was present during the offense. The testimony by both the complainant and Nalley made it clear that the appellant was not merely a participant, but indeed was the instigator. It was the appellant who first attacked the complainant, grabbing her hair with such force that he pulled her earring out, and then beat her head against the floor of the van. The appellant pinned the complainant down with his knees, then raped her. Modest and the other men in the van then took their turns—except Nalley, who abstained from the rape but did nothing to stop it.

The likelihood that Modest's supposed testimony could prevail in a "swearing match" against the complainant and Nalley is minimal, in view of the strength of the identification testimony. Nalley stated that he had known the appellant for several months. The complainant did not know the appellant personally. However, she was in the back of the van with him for some twenty minutes before the rape began, and she got a good view of the appellant during this time. When detectives later showed the complainant a photo spread, she immediately recognized the appellant's picture.

There is yet another factor which negates any reasonable possibility that Modest could have convinced the jury that the appellant was not present: The van belonged to the appellant.

The record before us does not support the conclusion that appellant was prejudiced by the delay. In applying the balancing factors of *Barker v. Wingo*, supra, speculation of possible harm should not be placed on the scales. The evidence presented does not tilt in favor of the appellant. The State's motion for rehearing should be granted, and the judgment affirmed. Because the majority refuses to do so, I dissent.

W.C. DAVIS and CAMPBELL, JJ., join in this dissent.