ACCEPTED
05-15-00012-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/16/2015 12:00:43 AM
LISA MATZ
CLERK

CAUSE NO.  05-15-00011-CR, 05-15-00012-CR, 05-15-00013-CR

IN THE FIFTH COURT OF APPEALS
DALLAS, TEXAS

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/16/2015 12:00:43 AM
LISA MATZ
Clerk

BERNARD JEROME COY,

*Appellant,*

V.

THE STATE OF TEXAS,

*Appellee.*

ON APPEAL FROM THE 363RD DISTRICT COURT, DALLAS COUNTY

The Honorable Pat McDowell, Presiding

Trial Cause No. F12-537-22, F14-701-04, F14-701-05

Appellant's Brief

ORAL ARGUMENT REQUESTED

Respectfully submitted,

Angel Mata
THE LAW OFFICE OF ANGEL MATA, P.C.
4314 N. Central Expwy.
Dallas, TX  75206
972.357.4956 :T
972.534.1715 :F
attorney@ANGELMATAlaw.com
Texas Bar No. 24063940
Attorney for Appellant

**1**

**APPELLANT'S BRIEF**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| MR. BERNARD JEROME COY | APPELLANT |
| STATE OF TEXAS | APPELLEE |
| MS. ANGEL MATA<br>  The Law Office of Angel Mata, P.C.<br>  4314 N. Central Expwy.<br>  Dallas, TX  75206 | APPELLANT'S ATTORNEY<br>  (TRIAL & APPEAL) |
| MR. DIMITRI ANAGNOSTIS<br>  Assistant District Attorney<br>  Dallas County District Attorney's Office<br>  Frank Crowley Courts Building<br>  133 N. Riverfront Blvd., LB-19<br>  Dallas, TX  75207 | STATE'S ATTORNEY<br>  (TRIAL LEVEL) |
| MRS. SUSAN HAWK (or her designated<br>  representative)<br>  Dallas County District Attorney's Office<br>  Frank Crowley Courts Building<br>  133 N. Riverfront Blvd., LB-19<br>  Dallas, TX  75207 | STATE'S ATTORNEY<br>  (APPEAL) |
| HONORABLE PAT MCDOWELL<br>  363RD Criminal District Court<br>  Frank Crowley Courts Building<br>  133 N. Riverfront Blvd.<br>  Dallas, TX  75207 | JUDGE PRESIDING |

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . .. . . . . . . . . . . . . . . . . .   2

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

ANY STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . .   5

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . .. . . . . .. . . . . . . . .   11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Point of Error 1

*The trial court erred in finding that the Appellant's right to speedy trial was not violated.*

Point of Error 2

*The trial court erred by not dismissing the indictment against Appellant on the grounds that Appellant's right to speedy trial was violated.*

Point of Error 3

*The Appellant was denied his Sixth Amendment right to speedy trial because the delay in prosecution was presumptively prejudicial.*

Point of Error 4

*The Appellant was denied his Sixth Amendment right to speedy trial because the Appellee gave no valid reason for the delay.*

Point of Error 5

*The Appellant was denied his Sixth Amendment right to speedy trial because the Appellant timely asserted his right to speedy trial.*

Point of Error 6

*The Appellant was denied his sixth amendment right to speedy trial because he was prejudiced by the delay.*

Point of Error 7

*The trial court erred in the application of the Barker balancing test.*

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

## INDEX OF AUTHORITIES

Cases                                                                    Page

*Federal Cases*

*Barker v. Wingo*, 407 U.S. 514 (1972)                                    11-21

*Doggett v. United States*, 505 U.S. 647 (1992)                          13, 18

*United Stated v. Marion*, 404 U.S. 307 (1971)                               18

*State Cases*

*Dragoo v. State*, 96 S.W.3d 308 (Tex. Crim. App. 2003)                  12, 18

*Hardesty v. State*, 738 S.W.2d 9 (Tex. App. – Dallas 1987)                 15

*Phillips v. State*, 650 S.W.2d 396 (Tex. Crim. App. 1983)              18 – 21

*Shaw v. State*, 117 S.W.3d 883 (Tex. Crim. App. 2003)            12, 17, 18, 21

*State v. Burckhardt*, 952 S.W.2d 100 (Tex. App. – San Antonio              12
1997).

Constitution, Rules, Statutes

U.S. Const. amend. VI

U.S. Const. amend XIV

**TO THE HONORABLE COURT OF APPEALS:**

**COMES NOW,** BERNARD JEROME COY, hereinafter referred to as the Appellant and respectfully submits this brief on appeal for three charges of possession of controlled substance. The Appellant would show the following points of error of which he wishes to complain.

## STATEMENT OF THE CASE

The Appellant was charged with three felony offenses of possession of a controlled substance arising out of two different transactions. (RR1: 4, 5). One offense and arrest took place on March 25, 2012 and the other two on April 21, 2012. (RR1: 4, 5). The court heard Appellant's Motions for Speedy Trial on May 25, 2014. (RR1: 1). The Motions for Speedy Trial were denied by the trial court and findings of fact and conclusions of law were entered into the record. (CR1: 31; RR2: 6). The Appellant subsequently plead guilty to all three offenses and received deferred probation however the trial court granted permission for Appellant to appeal. (RR2: 7; RR3:7; CR1:41). Appellant appeals all three cases this instant appeal follows.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument and believes that the Court's decisional process would be aided by oral argument. More specifically, this appeal, though factually straightforward, involves several different issues pertaining to the Appellant's right to speedy trial and the dates on which the events all took place are easily confused and oral argument would help set forth a timeline of events. Appellant believes that the Court would be assisted in understanding the facts and the law by having parties' counsel argue their respective positions.

## ISSUES PRESENTED

### Point of Error 1

*The trial court erred in finding that the Appellant's right to speedy trial was not violated.*

### Point of Error 2

*The trial court erred by not dismissing the indictment against Appellant on the grounds that his right to speedy trial was violated.*

### Point of Error 3

*The Appellant was denied his Sixth Amendment right to speedy trial because the delay in prosecution was presumptively prejudicial.*

### Point of Error 4

*The Appellant was denied his Sixth Amendment right to speedy trial because the Appellee gave no valid reason for the delay.*

### Point of Error 5

*The Appellant was denied his Sixth Amendment right to speedy trial because the Appellant timely asserted his right to speedy trial.*

### Point of Error 6

*The Appellant was denied his Sixth Amendment right to speedy trial because he was prejudiced by the delay.*

### Point of Error 7

*The trial court erred in the application of the Barker balancing test.*

## STATEMENT OF FACTS

On March 25, 2012, Appellant was arrested for possession of a controlled substance, (cause number F12-537-22) and two misdemeanor offenses. (RR1: 5, 14 CR1 of F12-537-22: 12). He was subsequently arraigned on the felony possession

**7**

**APPELLANT'S BRIEF**

of a controlled substance on March 26, 2012 at 5:18pm. (RR1: 30; CR1 of F12-537-22:12) On April 21, 2012, Appellant was arrested for two additional charges of possession of a controlled substance (cause numbers F14-701-04 and F14-701-05) and two additional misdemeanor offenses. (RR1: 4, 7, 14). Appellant was taken to the hospital and turned himself into the jail the following day and was able to bond himself out. (RR1: 4, 14, 21).

For almost two years, all three felony offenses remained unindicted however the misdemeanor cases were filed by information and Appellant was required to go to court and answer for those offenses. (RR1: 14-15). In Dallas County it is the normal practice of the misdemeanor courts not to allow the accused to plea to misdemeanor offenses if they have unresolved or pending felony offenses out of the same transaction and to "pass" or delay them as a "FE(L)P." (RR1: 31). Between the time of arrests and the date of the hearing, Appellant was required to appear at court for the misdemeanor offenses 33 times. (RR1: 15).

On January 14, 2014, F12-537-22 was indicted however the final two cause numbers remained unindicted. (RR1: 5; CR1: 07). In early 2014, Appellant learned there were two additional warrants for his arrest in cause numbers F14-701-04 and F14-701-05 yet the cases remained unindicted and unfiled. (RR1: 18).

On February 28, 2014, Appellant's third and final attorney made an appearance for the very first court setting on any of the felony offenses. On this court date Appellant was granted personal recognizance bonds on F14-701-04 and F14-701-05 because warrants had been issued for his arrest. (CR1: 5). The following court date after the initial appearance, on March 17, 2014, Appellant asserted his speedy trial right on a "pass slip" filed with the court on March 17, 2014. (RR1: 11). Appellant began appearing at court now for all the misdemeanor

offenses and the one felony offense however the two remaining felony offenses remained unindicted. (RR1: 15).

On April 23, 2014, Appellant filed three Motion's for Speedy Trial on all three separate causes. (CR1: 22). On May 25, 2014, the court conducted a hearing on Appellant's Motions for Speedy Trial. (RR1: 1). On October 31, 2014 the trial court denied all three Motions for Speedy Trial and findings of fact and conclusions of law were filed with the court. (RR3: 6; CR1:32). At the time of the hearing the two remaining causes F14-701-04 and F14-701-05 still remained unindicted. (CR1: 08; CR1: 08). From the date of first arrest to the time of the hearing, over two years had elapsed. (RR1: 14).

At the hearing, the State of Texas by and through his assistant district attorney, Dimitri Anagnostis, hereinafter referred to as Appellee stated that the delay on indictment was a result in a backlog at the lab that tests the drugs. (RR1: 4). He stated that the lab test was not conducted until October 30, 2013 and "there was a little bit of a delay between the offense date and the lab." (RR1: 6). Appellee further stated that because Appellant was out on bond that his case got "pushed to the bottom" and that the Appellee's concentration was on individuals "who are in jail for a period of time" and those jail cases were "number one priority." (RR1: 6). The Appellee also stated that there was additional delay because the police officers "were unable to identify the type of drug." (RR1: 7, 28). At the hearing no evidence was presented to substantiate either of the reasons the Appellee alleged for their delay. (RR1: All).

During the hearing the Appellant testified regarding the prejudice he sustained during the pendency of the prosecution. (RR1: 13- 33). He began by stating that while awaiting prosecution on the felony cases he was required to attend court 33 times on the misdemeanor cases. (RR1: 15). The cases were reset

each time for "FE(L)P" which meant a felony was pending. (RR1: 31). During this time he also had to report in to his bondsman once a week, totaling 116 times. (RR1: 16). Each of the 33 times Appellant came to court he was accompanied by his father, and his mother on occasion. (RR1: 16). Having just secured employment the month prior to the hearing he already had to miss work to attend court. (RR1: 16). He also indicated that each time his father accompanied him to court he had to miss work as well. (RR: 16).

Appellant stated that during the two years after the arrest he was unable to secure employment and believed he was not able to find employment in part because his criminal history showed that he had three felony arrests. (RR17). While not admitted into the record, the Appellant brought with him, paperwork to evidence all the places he had applied for employment. (RR1:17). He testified that he believed he had applied to well over a hundred jobs. (RR1: 17).

Appellant further stated that the pending cases caused him stress, "monetary issues" and effected his family. (RR1: 19). Despite going to court every month and checking in with the bondsman on a weekly basis, after the lab was returned on the felony offenses warrants were issued for his arrest and the police went to his parents' home to arrest him. (RR1: 19). Appellant retained a new attorney and was able to secure personal recognizance bonds on the two newly issued warrants for the F14 causes. (RR1: 20). With two personal recognizance bonds, Appellant was booked into the county jail at 10:30am and not released until the following morning at 1:00am. (RR1: 20-21). Appellant also testified that there was anxiety in knowing warrants could be issued at any time because of the two unindicted cases. (RR1: 23). He also indicated that he had anxiety knowing that if he ever missed a court date or failed to check in with his bondsman just once over the previous two years that a warrant could be issued for his arrest.  (RR1: 23).

**APPELLANT'S BRIEF**

# SUMMARY OF THE ARGUMENT

The trial court erred in not dismissing the indictment against Appellant after his Sixth Amendment right to speedy trial was violated. The trial court incorrectly balanced the *Barker* factors in favor of the Appellee.

The length in delay was of over two years and was presumptively unreasonable and the reason for the delay was inadequate and should have been weighed heavily against the Appellee. Moreover the trial court in his findings of facts and conclusions of law determined the period of delay was "presumably harmful." The Appellee's excuse for the delay was that there was a back log at the lab and that jail cases were processed first. The Appellee also stated that the delay was also due in part because the police were unable to identify the type of drug the Appellee was alleged to have possessed. Neither of these reasons was evidenced with anything besides the Appellee's argument.

The Appellant timely asserted his right to speedy trial on March 17, 2014. In the F12 cause he asserted his right on his counsel's second appearance and asserted his speedy trial right on the other two F14 causes to indictment. The trial court agreed that Appellant timely asserted his right to speedy trial.

Appellant suffered prejudice as a result of the delay. Appellant lived under a cloud of fear of arrest on all three causes. If he failed to show up to court or failed to check in with his bondsman he would get warrants issued for his arrest. He was made to report to court 33 times in misdemeanor court and report to his bondsman 116 times over the course of two years awaiting the felonies to be indicted.

Additionally the stress caused to his family was reflected upon him as well. Each time he appeared at court his father or mother would accompany him and in

2014 some two years after the initial arrest the police showed up at his parents home attempting to arrest him on warrants for in the F14 causes.

Appellant also believes that his defense may have been harmed after two years and was unsure how he would be able to contact the two witnesses to the offense/arrest. For all of the aforementioned reasons he suffered anxiety that exceeded that of a normal prosecution.

## ARGUMENT

The *Sixth Amendment to the United States Constitution* provides that the accused shall enjoy the right to speedy trial. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).This constitutional right is subsequently made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Id.* at 313. The right to speedy trial while not invoked as frequently as one's other fundamental rights is equally as important and "must be carried out with full recognition." *Barker v. Wingo*, 407 U.S. 514, 515, 533 (1972).

Unlike one's other constitutional rights, the right to a speedy trial does not attach until a person has been formally "accused." *State v. Burckhardt*, 952 S.W.2d 100, 102 (Tex. App. – San Antonio 1997). To invoke one's right to a speedy trial one must be under indictment, have been arrested or otherwise officially accused. *Id*, at 102. In the instant cases, Appellant was arrested as a result of the first incident on March 25, 2012. (RR: 14) He was arrested a total of three times for the second incident, on April 21, 2012, April 23, 2012 and February 28, 2014. (RR: 14). Since the right to a speedy trial does not attach until one has been arrested, indicted or otherwise formally charged, in the instant case, Appellants right attached on March 25, 2012 when he was first arrested and arraigned (March 26, 2012) for the F12-537-22 offense. (RR1: 6, 30). His right attached in the F14 causes when he was arrested and arraigned on April 28, 2014. (RR1: 7; CR1: 13).

The test in determining whether or not the speedy trial right of the accused was violated are set forth in the four factor balancing test of *Barker*, 407 U.S. at 530. This test balances the conduct of not just the accused but also the state in determining if there was a violation of the accused's right to speedy trial. *Id* at 530. The four balancing factors include: 1. the length of the delay, 2. the reason for the delay, 3. the defendant's assertion of his right to speedy trial and 4. prejudice to the defendant because of the delay. *Id.* at 530 After assessing each factor the court must be balance them together to determine if the accused right to speedy trial has been violated. *Id.*

I.      The Length of the Delay.

To begin the balancing test the accused must first surpass the triggering mechanism set forth in *Barker*. *Id.* According to *Barker* "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* While *Barker* did not draw a bright line rule in the amount of time that must pass, the court in *Doggett* gave some guidance when determining if the delay is presumptively unreasonable. *Id.*; *Doggett*, 505 U.S. at 652. When applying the test each individual trial court must look at the "peculiar circumstances of the case." *Barker*, 407 U.S. at 530.

In all of the instant cases, the time that elapsed between the time of arrest and time of the hearing exceeded two years. (RR1: 1, 4). Due to the extent of the delay in the trial courts findings of facts and conclusions of law the court agreed with Appellant and found that the delay was "presumably harmful" thereby triggering the rest of the *Barker* test. (CR1: 32). The trial court having determined that the delay was presumptively unreasonable, the Court then proceeds to the following factors of the balancing the test set forth in Barker.

II.     The Reason for the Delay.

The second factor the Court factors in is "the reason for the delay." *Id.* In *Barker* the court provided that the burden ultimately rests with the State in providing a reason for the delay rather than with the accused. *Id.* at 531. The weight to be given this factor in the balancing test is determined on a case by case basis. *Id.* For example, if the state had intentionally caused the delay it would be weighed more heavily against them than had they just been negligent. *Id.* In some instances the accused may cause the delay, to gain a tactical advantage in plea negotiations. *Id.* at 519. In such instances "the reason for the delay" factor would be weighed against the accused. *Id.* at 526-527.

In the instant case the Appellee, provided no testimony or actual evidence for the cause of the delay and only argument. (RR1: All). The Appellee stated that there were "delays in getting drugs tested" and those "on bond" had their labs "pushed to the bottom." (RR1: 6-7). The Appellee indicated that their "concentration" was on those in jail and that was their "number one priority." (RR1: 6). Since Appellee was not in jail his case was "pushed to the bottom," not their "number one priority." (RR1: 6). The State also placed some blame on the police agency for the delay stating that the "officer could not identify what drugs there were." (RR1: 7).

The court in *Barker* recognized that in some instances the state has no control over crowded dockets which may cause delay however even a crowded court docket would be balanced against the state. *Shaw v. State*, 117 S.W.3D 883, 890 (Tex. Crim. App. 2003).; *Barker*, 407 U.S. at 519-520.

However, the delay set forth in this cause was due to a backlog at a "lab," completely independent of the courts and something presumably the Appellee has control over. (RR1: 6-7). The Appellee provided no testimony or evidence evidencing what labs were being used, what the length of delay is in the jail cases

versus bond cases or if there were other alternative labs that could be used. (RR1: Whole). They further placed blame on the police however the record does not reflect when the police even submitted the drugs to the lab for testing or how much of a delay was attributable to the police. (RR1: Whole).

The trial court in their findings of facts and conclusion of law believed the delay was "not intentional or negligent and are slightly weighted against the state." (CR1: 33). The courts in other cases have weighed the backlog of the docket against the State however they have given it only little weight. In the instant case the court should weigh it more heavily against the Appellee as there is no evidence that by the Appellee why it takes so long, what the normal wait time is, whether there are other laboratories that could test the drugs in a timelier manner. Further, this case is distinguishable from *Barker* and other appellate cases in that the delay pertains to the lab rather than the court's docket. *Id.* at 519-520; *Hardesty v. State*, 738 S.W.2d 9, 10-11 (Tex. App. – Dallas 1987). With multiple labs across the United States, presumably the State could send the drugs to another lab to get the results back in a timelier manner. Unlike a heavy court docket where one must have consent or good cause to transfer to another court, presumably, the State could send the drugs to another lab that is not so back up that it takes almost two years to test drug evidence.

Lastly, the record reflects that despite the Appellees excuse for delay being the clogged labs the record shows that the drugs were tested on October 28, 2013 and in the F12 cause it still took at additional three months to indict the case (January 9, 2014). (RR1: 6). Additionally, even with the lab results from October 28, 2013 the two F14 causes at the time of speedy trial hearing still remained unfiled and unindicted. (RR1: 8). The Appellee indicated that they were "waiting to be put on

the new online system." and he had contacted some "individuals." (RR1: 8-9) At the time of the hearing the Appellee now had the lab available for eight months.

While he trial court weighed the third factor only slightly against the Appellee, the Appellant believes this factor should be given more weight considering the control the State has over the lab the drugs are sent to, the lack of "evidence" provided by the Appellee to substantiate their claims, placing the blame on the police and the fact that the F14 causes were still unindicted, unfiled and just waiting to be put on the new online system." It is the burden of the State to "insure that the trial is consistent with due process" and if there is a backlog at the lab they employ it is "incumbent upon the state ensure somebody has a speedy trial and that they get a fair trial." *Barker,* 407 U.S. at 527; (RR1: 36). In *Barker*, the court provides that the "defendant has no duty to bring himself to trial," in the instant case counsel had to go so far as to create its own docket sheets. (RR1: 37); *Id.* In argument counsel stated that she thinks "it's about time that somebody stand up and says that this is---this is unreasonable, that Dallas County needs to send their drugs somewhere else to get them tested a lot quicker" because it is the "State's responsibility to ensure that he receives a fair and speedy trial." (RR1: 11-12). For the foregoing reasons the Appellee believes that the weight against the Appellee should be more than just slight."

III.    The Defendant's Assertion of His Right.

The appellate courts have held that the accused must assert his right in a timely manner however "a defendant has no duty to bring himself to trial, the State has that duty as well as the duty of insuring that the trial is consistent with due process." *Id.* If the accused does not assert his right in a timely manner then it may be construed as a waiver and that he did not really want a speedy trial afterall. *Id.*

**APPELLANT'S BRIEF**

After creating his own docket sheet for entry, the Appellee timely asserted his right to speedy trial on March 17, 2014. (RR1: 11, 37). Appellee asserted his right to speedy trial only two month after indictment in the F12 cause and prior to indictment in the F14 causes. (RR1: 6-7, 11). The trial court in his findings of facts and conclusions of law agreed that the defendant had timely asserted his right. (CR1: 33). Despite finding that the Appellee timely asserted his right the trial court indicated that the weight of this factor was mitigated because Appellant "was seeking dismissal rather than a speedy trial." (CR1: 33). The appellate courts are very clear that the proper remedy for a violation of one's speedy trial right is dismissal and believes that because Appellant requested dismissal in his prayer to the trial court that it should not be assessed against him. *Shaw*, 117 S.W.3d at 888.; (CR1: 22). Appellant believes the trial court incorrectly mitigated the third factor and unmitigated weight of this factor should be held in favor of Appellant.

IV.     Prejudice to the Appellant Resulting from the Delay.

The last factor and what the appellate courts have indicated is the most important is the prejudice to the accused caused by the delay. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). *Barker*, 407 U.S. at 533; *Dragoo*, 96 S.W.3d  at 316. While this factor is the most important it is also the most difficult to establish, that is why the courts have provided that it is not necessary to show actual prejudice so long at the accused is able to show some prejudice. *Doggett v. United States*, 505 U.S. 647, 655 (1992). The courts have additionally indicated that no one single factor is "necessary or sufficient" to establish that there has been a violation. *Shaw*, 117 S.W.3d at 889.  The court in the *United States v. Marion* stated that "possible prejudice is inherent in any delay, however short." *United Stated v. Marion*, 404 U.S. 307, 322 (1971).

When weighing the amount of prejudice, *Barker* further requires that the courts must balance three interests of the defendant: a. to prevent oppressive pretrial incarceration, b. to minimize anxiety and concern of the accused; and c. to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 518.

### a. To Prevent Oppressive Pretrial Incarceration

While the court in *Barker* cited that incarcerated individuals have the most detrimental impact, the fact that someone has not been in jail awaiting trial does not go without notice. *Id.* at 532. In the instant case the Appellant cited several sources of anxiety involving pretrial incarceration including a total of four arrest, police going to his parents' house to arrest him and constant fear of being rearrested. (RR1: 14-16, 21).

In *Phillips v. State* the accused was not arrested pre-indictment and did not learn of the indictment until over a year later however the court still found prejudice in the "potential danger inherent in any delay" and "even more when, as here, the danger is not even perceived." *Phillips v. State*, 650 S.W.2d 396, 402 (Tex. Crim. App. 1983). Considering that two criminal episodes led to Appellant being incarcerated a total of four times, the Appellant believes this should be weighed in his favor.

### b. To Minimize Anxiety and Concern of the Accused

The second interest the accused has in preventing prejudice is to minimize anxiety and concern of the accused; *Barker*, 407 U.S. at 518. The court in *Barker* discussed different sources of anxiety an accused may encounter while he awaits trial including loss of job, disruption to family life, and enforcement of idleness, as well as living under the cloud of anxiety, suspicion and often hostility. *Id.* at 532-533.

**APPELLANT'S BRIEF**

Appellant was able to identify several sources of anxiety and stress that the pending cases had caused him in addition to that one may normally experience when faced with criminal prosecution. This stress and anxiety was caused by the 33 times he had to appear in misdemeanor court, the 116 times he checked in with his bondsman, "monetary issues," inability to gain employment and missing work to appear for court. (RR1: 15-19). He also stated that the stress to his family had an impact on him as well. (RR1: 19). He described how the police went to his parents' home looking for him despite the fact that he was attending court on a monthly basis and he described how his parents missed work each time they came to court with him. (RR1: 16, 19).

The trial court in the courts findings of fact and conclusions of law stated anxiety was "scarcely shown" and there was "minimal anxiety due to the delay." (CR1: 33). Appellant believes the court erred in the weight given to this factor considering the numerous sources of anxiety and stress caused to him because of the delay prosecution as previously stated. In *Phillips* the court still found that the accused right to speedy trial was violated despite even thought he was not aware of the case pre-indictment and when discussing the anxiety the accused encountered they stated "we can hardly dismiss appellant's claim by saying that 'where ignorance is bliss, `tis folly to be wise.' *Phillips,* 650 S.W.2d at 401. Accordingly, the resulting anxiety and stress went beyond that normally encountered when awaiting prosecution and should be weighed against the State for their delay.

### c. To Limit the Possibility that the Defense Will be Impaired

In *Barker* the court stated that this last interest was the most serious of the three when determining if there was prejudice because they believed "the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

*Barker*, 407 U.S. at 532. Extensive delay that may impair the defendant's defense include loss of or fading memory and the unavailability of witnesses. *Id.* at 521.

During the hearing in the instant case there was evidence that there was a witness in the F14 causes by the name of "P. Crowder" who the Appellant no longer had contact. (RR1: 22, CR1: 9). Additionally, there was an unknown 911 caller in) that the Appellant was not aware of and can be evidenced by the Affidavit for Arrest. (CR1: 8 of the F12 cause). At the hearing the Appellant testified that he did not know how he would have been able to keep track of these two individuals over a two year period. (RR1: ALL). Considering the aforementioned, Appellant believes the last interest should would in his favor. There is no evidence that the Appellant knew who the 911 caller was and he is unsure how he was to try and track down any witnesses given the passage of two years.

In *Phillips* the accused could not testify whether the deceased witness would have been favorable to him however the courts do not put that impossible burden on the defense to make this showing. *Phillips*, 650 S.W.2d at 402. Like in *Phillips* it is possible that the witness would have testified favorably for the State or would not have added anything to for the defense of Appellant however it is not necessary for Appellant to make this showing. *Id*. at 402.

V.    Balancing All Four Factors.

Having addressed the four *Barker* factors, we must now balance them to determine if there was a violation of the Appellants Sixth Amendment right to speedy trial. Weighing in favor of a violation, was the presumptive prejudice of the two year delay found by the trial court and evidences by the record. Second, weighing in favor of a violation was the reason for the delay. The Appellee was unable to articulate any basis in law or equity that excused their delay and the

delay was distinguishable from the overcrowded dockets that the appellate courts have encountered in the past because Appellee has control over where the drugs are sent to. Third, weighing in favor of violation is that the Appellant as the trial court noted as well was that the Appellant timely asserted his right and was not the cause of the delay. Lastly and most importantly, the Appellant was able to establish several causes of prejudice. With the weight of all the factors together, balanced together, the Court should find that the Appellant was prejudiced by the unreasonable delay and his fundamental right to a speedy trial secured by the Sixth Amendment to the U.S. Constitution was violated.

VI.     Remedy.

If the court finds that an accused right to speedy trial has been violated the proper remedy is dismissal. *Shaw*, 117 S.W.3d at 888. Consequently, Appellant prays the court remand the case back to the trial court for dismissal. Appellant believes that the weight of the four factors balanced together, should be in favor of finding that there was a violation of Appellants right to a speedy trial.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED** Appellant requests that the court find that the trial court should have granted the Motion for Speedy Trial and asks that the appellate court reverse the judgement of the trial court and remand the case to the trial court for dismissal.

Respectfully submitted,

_/s/ Angel Mata_____
Angel Mata
THE LAW OFFICE OF ANGEL MATA, P.C.
4314 N. Central Expwy.

Dallas, TX  75206
972.357.4956 :T
972.534.1715 :F
attorney@ANGELMATAlaw.com
Texas Bar No. 24063940

Attorney for Appellant

## CERTIFICATE OF SERVICE

This certifies a true and correct copy of the foregoing Appellant's Brief was emailed to the Assistant District Attorney on June 16, 2015 at dcdaappeal@dallascounty.org.

Respectfully submitted,


By: _/s/Angel Mata_____
ANGEL MATA
State Bar No. 24063940
Attorney for Appellant