The STATE of Texas, Appellant,

v.

Kenneth L. WILLIAMS, Appellee.

No. 13–01–493–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 24, 2002.

George P. Morrill, II, District Attorney, Herbert B. Hancock, Assistant District Attorney, Beeville, for Appellant.

Mary R. Collina, Corpus Christi, for Appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

While incarcerated at the McConnell Unit of the Texas Department of Criminal Justice (TDCJ), Kenneth L. Williams was indicted on three counts of assault on a public servant. Afterwards, he filed a motion to dismiss the indictment, asserting preindictment delay and violation of his right to speedy trial. After a hearing, the trial court dismissed the case based upon preindictment delay, but denied relief based upon violation of speedy trial. By a single issue, the State argues that the trial court erred in dismissing the case based upon preindictment delay. Williams brings a point of error complaining that the trial court erred in failing to dismiss the case based upon violation of speedy trial. We affirm in part and reverse and remand for trial.

## I. JURISDICTION

■ Before addressing the merits of this appeal, we discuss Williams's challenges to our jurisdiction. He first complains we lack jurisdiction because the State filed the notice of appeal in the wrong cause number. *See Steinecke v. State,* 81 S.W.3d 467, 467 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (notice of appeal filed in wrong cause number does not confer appellate jurisdiction). Williams was indicted in Cause No. B–00–M019–3–PR–B, and the dismissal order from which the State appeals bears the same cause number. The trial court entered the dismissal on July 5, 2001. Eleven days later, the State filed the notice of appeal bearing the same cause number as the dismissal. The notice of appeal was filed in the correct cause number and was timely filed within fifteen days of the date the trial court entered the dismissal. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(d) (appeal must be filed within fifteen days after the date on which the order, ruling, or sentence to be appealed is "entered by the court."); *see also* TEX.R.APP. P. 26.2(b).

Williams complains the notice of appeal in the body of the notice gives the wrong cause number of the dismissal being appealed. Rule 25.2(b)(2) of the Texas Rules of Appellate Procedure provides that a notice of appeal is "sufficient" if it shows the party's desire to appeal "and, if the State is the appellant, the notice complies with Code of Criminal Procedure article 44.01." TEX.R.APP. P. 25.2(b)(2); *State v. Riewe,* 13 S.W.3d 408, 411 (Tex.Crim.App. 2000). Here, the notice of appeal states: "within the 15 days of Granting the Dis-

missal on the above mentioned cause, the State files this Notice of Appeal to the 13th Court of Appeals of the Dismissal on June 5, 2001 [sic] in Cause Number B–98–M012–0–PR–B . . . ." The stated cause number is not the same as that shown on the dismissal being appealed. This error, however, does not defeat our jurisdiction. The notice of appeal declares the State is appealing from "the above mentioned cause." We read the notice of appeal as containing a clerical error that does not defeat our jurisdiction. Article 44.01 of the Texas Code of Criminal Procedure does not require the State's notice of appeal to give the cause number of the dismissal being appealed. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01 (Vernon Supp. 2002). It is apparent from the record that the State filed the notice of appeal in the cause number stated on the dismissal. The notice of appeal is sufficient because it shows the State's desire to appeal from the dismissal, and the notice complies with article 44.01. *See* TEX.R.APP. P. 25.2(b)(2); *Riewe,* 13 S.W.3d at 411. We hold that we do have jurisdiction of this appeal.

## II. PREINDICTMENT DELAY

### A. ARTICLE 32.01

■ The motion to dismiss asserted violations of both article 32.01 of the Texas Code of Criminal Procedure and violations of the Fifth and Sixth Amendment rights to speedy trial. Article 32.01 allows a trial court to dismiss an indictment that is not timely returned if the defendant is in custody or on bail. *See* TEX.CODE CRIM. PROC. ANN. art. 32.01.[1] However, Williams did

---

1. This statute provides:
 When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall

be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the

not file his speedy-trial motion based upon article 32.01 until after he was indicted. A speedy-trial motion based upon article 32.01 has no effect if it is presented after indictment. *Brooks v. State*, 990 S.W.2d 278, 285 (Tex.Crim.App.1999) (citing *Tatum v. State*, 505 S.W.2d 548, 550 (Tex. Crim.App.1974)); *Smith v. State*, 998 S.W.2d 683, 694 (Tex.App.-Corpus Christi 1999, pet. ref'd).

### B. LIMITATION BAR

■ Statutes of limitation are the primary protection against preindictment delay and the prejudice that results from the passage of time. *Ibarra v. State*, 11 S.W.3d 189, 193 (Tex.Crim.App.1999); *Moore v. State*, 943 S.W.2d 127, 128 (Tex. App.-Austin 1997, pet. ref'd).[2] Here, the offense occurred on November 5, 1999, and Williams was indicted for it on November 7, 2000. Thus, limitations does not bar this prosecution. *See* TEX.CODE CRIM.PROC. ANN. art. 12.01(4) (Vernon 1977).

### C. FIFTH AMENDMENT RIGHT TO DUE PROCESS

■ Though limitations is not a factor in this case, due process requires dismissal of an indictment if the accused shows that the preindictment delay (1) caused substantial prejudice to his right to a fair trial and (2) the delay was an intentional device

to gain tactical advantage over him. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Ibarra*, 11 S.W.3d at 193. The Due Process Clause does not invalidate criminal prosecutions simply because a reviewing court believes a prosecutor should have sought an indictment earlier. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Prosecutors are under no duty to file charges before they are satisfied they can prove a suspect's guilt beyond a reasonable doubt. *Id.* at 791, 97 S.Ct. 2044. To prosecute a defendant following delay caused by investigation of the case by the State does not deprive a defendant of due process, even if his defense might have been somewhat prejudiced by the lapse of time. *Spence v. State*, 795 S.W.2d 743, 749–50 (Tex.Crim. App.1990) (quoting *Lovasco*, 431 U.S. at 795–96, 97 S.Ct. 2044).[3]

### SUBSTANTIAL PREJUDICE

■ At the hearing on the motion to dismiss, defense counsel argued the preindictment delay impaired Williams's defense because he could not locate a witness, Jason Wimberly. Assuming substantial prejudice, there is no evidence that the delay was brought about by the State for the purpose of gaining some tactical advantage over him. *See Moore*,

---

date of commitment or admission to bail, whichever date is later.
TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon Supp.2002).

**2.** The *Moore* court said that: "It is extraordinarily difficult to show prejudice arising from a delay in an indictment that falls within the applicable statute of limitations period." *Moore*, 943 S.W.2d at 128 (citing *United States v. Martinez*, 77 F.3d 332, 335–37 (9th Cir.1996)).

**3.** In *Lovasco*, a seventeen-month delay occurred between the time that the prosecutors received the information upon which they ul-

timately indicted the accused and the time that he was actually indicted. The prosecutors argued that the delay occurred because they thought the crime may have involved other people. The Supreme Court stated the Due Process Clause does not permit courts to "abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. [P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *Lovasco*, 431 U.S. at 790–791, 97 S.Ct. 2044.

943 S.W.2d at 129. Here, the State's attorney informed the trial court that a thorough investigation of the incident caused the State to delay the indictment. Specifically, he said that there were a number of individuals involved and multiple allegations in addition to the offense alleged in the indictment.

Accordingly, the delay falls within the ambit of delay for investigative reasons, and, furthermore, is the same type of delay as that which was present in *Lovasco.* Williams has failed to satisfy the second prong of the due-process analysis. *See Marion,* 404 U.S. at 322, 92 S.Ct. 455; *Ibarra,* 11 S.W.3d at 193; *see also United States v. Crouch,* 84 F.3d 1497, 1514 (5th Cir.1996). We hold that the trial court erred in dismissing the indictment based upon preindictment delay.

### III. RIGHT TO SPEEDY TRIAL

■ Williams asserts the trial court erroneously denied relief based upon violation of a speedy trial. Williams asserts that he was denied his Fifth and Sixth Amendment rights to speedy trial due to delay after the indictment. The proper analysis requires four factors: (1) length of delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo,* 407 U.S. 514, 530–32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). When reviewing a trial court's decision to grant or deny a speedy trial claim, we defer to the court's findings of fact but review *de novo* its application of the law to those facts. *State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim.App.1999); *Johnson v. State,* 954 S.W.2d 770, 771 (Tex.Crim.App.1997).

■ This balancing test requires weighing case-by-case the conduct of both the prosecution and the accused. *Munoz,* 991 S.W.2d at 821. No single *Barker* factor is necessary or sufficient to the finding of a speedy-trial violation. *Id.* The factors must be considered together with other relevant circumstances. *Id.*

### A. LENGTH OF DELAY

■ We must find the delay presumptively prejudicial before analyzing the remaining *Barker* factors. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. Presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry. *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Munoz,* 991 S.W.2d at 821–22. We measure the delay from the time the defendant is formally accused or arrested to the time of trial. *Marion,* 404 U.S. at 313, 92 S.Ct. 455. An eight-month delay is presumptively unreasonable and prejudicial. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992). Here, although serving time for unrelated crimes when this offense allegedly occurred, Williams was arrested for this offense on November 5, 1999 and indicted on November 7, 2000. His first trial setting was April 23, 2001, which was an approximate seventeen and one-half month delay between the arrest and the trial setting. This delay triggers our consideration of the remaining *Barker* factors.

### B. REASON FOR DELAY

■ Under *Barker,* "different weights should be assigned to different reasons" for the delay. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A "deliberate attempt to delay the trial" weighs heavily against the State. *Id.* We consider whether the delay was due to deliberate attempts to hamper the defense or justified circumstances. *Crowder v. State,* 812 S.W.2d 63, 66 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). Here, the prein-

dictment delay was due to justified circumstances; *i.e.*, a thorough investigation. Nothing in the record shows the State caused the post-indictment delay of approximately five and one-half months. Instead, it appears that the delay arose from a neutral event such as a crowded court docket. Accordingly, the seventeen and one-half month delay was not due to a "deliberate attempt to delay the trial." We conclude that the delay should not be weighed against the State.

### C. Assertion of the Right

 A defendant's assertion of his speedy-trial right is entitled to strong evidentiary weight in determining deprivation of that right. *Floyd v. State*, 959 S.W.2d 706, 710 (Tex.App.-Fort Worth 1998, no pet.). Although a motion to dismiss notifies the State and the court of the speedy-trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim.App.1983). This is not to say, however, that asking only for dismissal will result in a waiver, while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim. *Id.* Each case must turn on its own facts, and the particular relief an accused seeks is but one fact to consider. *Id.*

Here, on April 12, 2001, eleven days before the trial setting, defense counsel filed a motion for continuance, asserting that she "has various investigative leads to pursue . . . ." Counsel filed the motion to dismiss for non-speedy trial on April 23, 2001. Based upon the record before us, it is fair to say Williams's goal was not to gain a speedy trial, but was an attempt to have the charge against him dismissed.

### D. Prejudice to the Accused

 In *Barker*, the Court identified three purposes behind the speedy-trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532–33, 92 S.Ct. 2182. In considering the factor of prejudice, moreover, the court of criminal appeals does not require proof of "actual prejudice," but only "some showing" that the delay has been prejudicial. *Munoz*, 991 S.W.2d at 826; *Phillips*, 650 S.W.2d at 401. Of these subfactors "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Munoz*, 991 S.W.2d at 826 (quoting *Barker*, 407 U.S. at 532–33, 92 S.Ct. 2182).

 When a defendant makes a "prima facie showing of prejudice," the State carries " 'the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.' " *Munoz*, 991 S.W.2d at 826 (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973)).

#### 1. Oppressive Pretrial Incarceration

 Two days after the alleged offense, TDCJ put Williams in administrative segregation. Due to an alleged incident with an inmate, TDCJ sent him to high security at the Estelle Unit. There, his recreation and commissary privileges were very limited. Williams's testimony was that since the indictment he has experienced additional restrictions such as "Total confinement to cell with no windows, hardly any sound, pretty much essential deprivation." He also said that he had "No radio, no newspaper. We are not allowed to have hygiene at certain levels, our food reduced at certain levels." These restrictions caused him mental distress and affected his ability to sleep. He

claimed that but for the indictment he would be in "general population." We conclude that he suffered some oppressive pretrial incarceration.[4]

### 2. ANXIETY AND CONCERN

 Considering the severity of the charge, a certain amount of anxiety while awaiting trial is to be expected. *See Thompson v. State*, 983 S.W.2d 780, 785 (Tex.App.-El Paso 1998, pet. ref'd). However, it was not until after November 7, 2000 that Williams's anxiety could have begun, because before then he was not under indictment. *See Phillips*, 650 S.W.2d at 401. There was only a five and one-half month delay between the indictment and the trial setting, and therefore, prejudice, if any, was minimal.

### 3. IMPAIRMENT OF DEFENSE

Williams argues that "At least one defense witness became unavailable due to the delay." He does not mention the witness by name, but he is apparently referring to Jason Wimberly, who was one of forty-four witnesses to the alleged offense. Williams does not argue how Wimberly's testimony keeps him from adequately preparing his case. Although counsel told the trial court that Wimberly would testify that he committed the offense, this is somewhat speculative because counsel did not state how she knew the context of his testimony. Further, we must consider this in light of Williams's testimony that he has a list of the forty-four witnesses, has talked to some of them, and if necessary they can testify on his behalf.

### E. BALANCING THE *BARKER* FACTORS

The delay was presumptively prejudicial, but not excessive. Williams has not shown

that the delay has impaired his defense to the extent that he cannot adequately prepare his case. Though he was under some anxiety while waiting for his trial, this is insufficient to cause the prejudice prong to weigh in his favor. Nothing in the record shows that the State deliberately delayed his trial. Further the prejudice suffered by Williams was minimal, and he suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. We hold that Williams was not denied a speedy trial. *See Munoz*, 991 S.W.2d at 822 (seventeen and one-half month delay did not violate speedy-trial rights). We overrule the point of error.

### IV. CONCLUSION

We AFFIRM that part of the trial court's order which denies dismissal for non-speedy trial. We REVERSE that part of the order which dismisses the case for preindictment delay and REMAND the case to the trial court.

---

4. Although Williams's incarceration was oppressive we cannot say the State was responsible for this incarceration. On cross-examination, the State's attorney asked him, "But in reality you didn't get back in general population because you had already been classified as a member of a disruptive group and transferred off of the facility where you were; is that correct?" Williams answered affirmatively.