NUMBER 13-01-465-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

THE STATE OF TEXAS,                                                         Appellant,

 

                                                   v.

 

BRIAN MCCOY,                                                                     Appellee.

 

 



                        On appeal from the 156th District Court

                                    of Bee County, Texas.

 



 

                                   O P I N I O N

 

        Before Chief Justice Valdez
and Justices Dorsey and Rodriguez

                                  Opinion by
Justice Dorsey

 








While incarcerated at the McConnell Unit
of the Texas Department of Criminal Justice (TDCJ), Brian McCoy was indicted on
three counts of assault on a public servant. 
After being indicted, he filed a motion to dismiss, asserting
preindictment delay and violation of his right to a speedy trial.  After a hearing, the trial court dismissed
the case based upon preindictment delay, but denied relief based upon violation
of speedy trial.  By a single issue, the
State argues that the trial court erred in dismissing the case based upon
preindictment delay.  McCoy brings a
point of error complaining that the trial court erred in failing to dismiss the
case based upon violation of speedy trial. 
We affirm in part and reverse in part.

The critical events in our analysis and
their dates are as follows: the alleged offense and appellant=s arrest
for it, November 5, 1999; appellant=s indictment, November 7, 2000; first
trial setting, April 23, 2001; motion for continuance by appellant, April 19,
2001; motion to dismiss for want of speedy trial, April, 23, 2001; and order of
dismissal, July 5, 2001.

                                                                 I. Jurisdiction








Before addressing the merits of this
appeal, we discuss McCoy=s challenges to our jurisdiction.  First, he complains the State filed the
notice of appeal in the wrong cause number. 
See Steinecke v. State, 81 S.W.3d 467, 467 (Tex. App.BHouston [1st Dist.] 2002, no pet.) (notice of appeal filed in wrong cause number does not confer
appellate jurisdiction).  McCoy was
indicted under Cause No. B-00-M019-2-PR-B, and the dismissal order from which
the State appeals bears the same cause number.  The trial court entered the dismissal on July
5, 2001.  Eleven days later, the State
filed the notice of appeal, which at its top, bears the same cause number as
the dismissal.  We conclude the notice of
appeal was filed in the correct cause number and, therefore, was timely
filed.  See Tex. Code Crim. Proc. Ann. art. 44.01(d) (Vernon Supp.
2002) (appeal must be filed within fifteen days after the date on which the
order, ruling, or sentence to be appealed is "entered by the
court."); see also Tex. R. App. P. 26.2(b).

Second, he complains the notice of appeal
gives the incorrect date for the date of the dismissal being appealed.  Rule 25.2(b)(2) of
the Texas Rules of Appellate Procedure provides that a notice of appeal is
"sufficient" if it shows the party's desire to appeal "and, if
the State is the appellant, the notice complies with Code of Criminal Procedure
article 44.01."  Tex. R. App. P. 25.2(b)(2); State v. Riewe, 13 S.W.3d 408, 411 (Tex. Crim.
App. 2000).  Here, the notice of appeal
states:  Awithin
the 15 days of Granting the Dismissal on the above mentioned cause, the State
files this Notice of Appeal to the 13th Court of Appeals of the Dismissal on
June 5, 2001 [sic] in Cause Number B-98-M012-0-PR-B [sic]. . . .@  The trial court dismissed the case on July 5,
2001, not June 5, 2001.  This error,
however, does not defeat our jurisdiction. 
The notice of appeal declares the State is appealing from Athe
above mentioned cause.@ 
This case involves only one dismissal, which the trial court signed on
July 5, 2001.  It is apparent from the
record that the State filed the notice of appeal in the cause number stated on
the dismissal.  Accordingly, the notice
of appeal is sufficient because it shows the State's desire to appeal from the
dismissal, and the notice complies with article 44.01.  We hold that we do have jurisdiction of this
appeal.








                                                          II. Preindictment Delay

                                                                 A.
Article 32.01

The motion to dismiss asserted violations
of both article 32.01 of the Texas Code of Criminal Procedure and violations of
McCoy=s Fifth
and Sixth Amendment rights to speedy trial. 
Article 32.01 allows a trial court to dismiss an untimely
indictment.  See Tex. Code Crim. Proc. Ann. art. 32.01.[1]  However, McCoy did not file his speedy-trial
motion based upon article 32.01 until after he was indicted.  A speedy-trial motion based upon article
32.01 has no effect if it is presented after indictment.  Brooks v. State, 990 S.W.2d 278, 285
(Tex. Crim. App. 1999): Smith v. State, 998 S.W.2d 683, 694 (Tex. App.BCorpus Christi 1999, pet. ref=d).

                                                        B.
Statute of Limitations








Statutes of limitation are the primary
protection against preindictment delay and the prejudice that results from the
passage of time.  Ibarra v. State,
11 S.W.3d 189, 193 (Tex. Crim. App. 1999); Moore v. State, 943 S.W.2d
127, 128 (Tex. App.BAustin
1997, pet. ref=d).[2]  A three-year statute of limitations governs
this case.  See Tex. Penal Code Ann. ' 12.01(4) (Vernon 1977).  Because the offense allegedly occurred on
November 5, 1999, and McCoy was indicted on November 7, 2000, limitations does not bar this prosecution.

                                          C.
Fifth Amendment Right to Due Process

Due process will require dismissal of the
indictment if McCoy shows that preindictment delay (1) caused substantial
prejudice to his right to a fair trial and (2) the delay was an intentional
device to gain tactical advantage over him. 
United States v. Marion, 404 U.S. 307, 322
(1971); Ibarra, 11 S.W.3d at 193. 
The Due Process Clause does not invalidate criminal prosecutions simply
because a reviewing court believes a prosecutor should have sought an
indictment earlier.  United
States v. Lovasco, 431 U.S. 783, 790 (1977).  Moreover, prosecutors are under no duty to
file charges before they are satisfied they can prove a suspect's guilt beyond
a reasonable doubt. Id. at 791.  To prosecute a defendant following
investigative delay does not deprive him of due process, even if his defense
might have been somewhat prejudiced by the lapse of time.  Spence v. State, 795
S.W.2d 743, 749-50 (Tex. Crim. App. 1990) (quoting Lovasco, 431 U.S. at
795-96).[3]








At the hearing on the motion to dismiss,
defense counsel argued the preindictment delay impaired McCoy=s
defense because he could not locate two witnesses, Jason Wimberly and Steve
Dunn.  Without deciding whether McCoy has
shown he was substantially prejudiced by the preindictment delay, we conclude
he has failed to show the delay was brought about by the State for the purpose
of gaining some tactical advantage over him. 
See Moore, 943 S.W.2d at 129.  Here, the State=s
attorney informed the trial court that a thorough investigation of the incident
caused the State to delay the indictment and that there were a number of
individuals involved in the incident.[4]  Accordingly, the delay falls within the ambit
of delay for investigative reasons, and, furthermore, is the same type of delay
as that which was present in Lovasco. 
McCoy has failed to satisfy the second prong of the due-process
analysis.  See Marion, 404
U.S. at 322; Ibarra, 11 S.W.3d at 193.  We hold that the trial court erred in
dismissing the indictment based upon preindictment delay.  We sustain the State=s point
of error.








                                                         III. Right to Speedy Trial

The trial court denied relief based upon
violation of the right to speedy trial. 
McCoy asserts that he was denied his Fifth and Sixth Amendment rights to
speedy trial due to post-indictment delay. 
Speedy-trial analysis requires us to examine four factors:  (1) length of delay; (2) reason for the
delay; (3) assertion of the right;  and (4) prejudice to the accused.  Barker v. Wingo, 407
U.S. 514, 530-32 (1972).  When
reviewing a trial court's decision to grant or deny a speedy-trial claim, we
defer to the court's findings of fact but review de novo its application of the
law to those facts.  State
v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); Johnson v. State,
954 S.W.2d 770, 771 (Tex. Crim. App. 1997).

This balancing test requires weighing case‑by‑case
the conduct of both the prosecution and the accused.  Munoz, 991 S.W.2d at
821.  No single Barker
factor is necessary or sufficient to the finding of a speedy-trial
violation.  Id.  We must consider the factors together with
other relevant circumstances.  Id.     

                                                              A.
Length of Delay








We must find the delay presumptively
prejudicial before analyzing the remaining Barker factors.  Barker, 407 U.S. at
530.  Presumptive prejudice does
not necessarily indicate a statistical probability of prejudice;  it simply marks the
point at which courts deem the delay unreasonable enough to trigger the Barker
inquiry.  Doggett v. United States,
505 U.S. 647, 652 n.1 (1992); Munoz, 991 S.W.2d
at 821-22.  We measure the delay from the
time the defendant is formally accused or arrested to the time of trial.  Marion, 404 U.S. at 313.  An eight-month delay is presumptively
unreasonable and prejudicial.  Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).  Here, McCoy was arrested for the offense on
November 5, 1999 and indicted on November 7, 2000.  His first trial setting was April 23,
2001.  Thus, an approximate seventeen and
one-half month delay existed between the arrest and the trial setting.  This delay triggers our consideration of the
remaining Barker factors.  

                                                            B.
Reason for Delay

Under Barker, "different
weights should be assigned to different reasons" for the delay.  Barker, 407 U.S. at
531.  A Adeliberate
attempt to delay the trial@ weighs heavily against the State.  Id. 
We consider whether the delay was due to deliberate attempts to hamper
the defense or justified circumstances.  Crowder
v. State, 812 S.W.2d 63, 66 (Tex. App.BHouston
[14th Dist.] 1991, pet. ref'd).  Here,
the preindictment delay was due to justified circumstances; i.e., a
thorough investigation of the case. 
Further, nothing in the record shows the State caused the approximate
five and one-half month delay between the indictment and the April 23, 2001
trial setting.  Instead, it appears this
delay arose from a neutral event such as a crowded court docket.  Accordingly, the seventeen and one-half month
delay was not due to a Adeliberate attempt to delay the trial@ or a
deliberate attempt to hamper the defense. 
We conclude that the delay should not be weighed against the State.

                                            C. Assertion Of The Right








A defendant's assertion of his
speedy-trial right is entitled to strong evidentiary weight in determining
deprivation of that right.  Floyd v.
State, 959 S.W.2d 706, 710 (Tex. App.BFort
Worth 1998, no pet.).  Although a motion
to dismiss notifies the State and the court of the speedy-trial claim, a
defendant's motivation in asking for dismissal rather than a prompt trial is
clearly relevant, and may sometimes attenuate the strength of his claim.  Phillips v. State,
650 S.W.2d 396, 401 (Tex. Crim. App. 1983).  This is not to say, however, that asking only
for dismissal will result in a waiver, while seeking a speedy trial and, in the
alternative, a dismissal, would preserve the claim.  Id. 
Each case must turn on its own facts, and the particular relief an
accused seeks is but one fact to consider. 
Id.

Appellant could not have sought a speedy
trial until after he was indicted in November, 2000, although he had been
arrested for the crime a year earlier.   Here, on April 19, 2001, four days before the
trial setting, defense counsel filed an application for continuance, in which
he sought to continue the trial based upon the following reasons:  (1) the defense had not received
court-ordered discovery; and (2) the defense had Ajust
learned@ that
TDCJ had released co-defendants, Dunn and Wimberly, from incarceration, and the
defense did not know of their whereabouts. 
The defense alleged that Dunn and Wimberly had Afirst-hand,
eyewitness knowledge of the occurrence in question. . . .@  The defense believed that these witnesses had
favorable information and sought to interview them.  On April 23, 2001, defense counsel filed the
motion to dismiss, alleging preindictment and post-indictment delay.  Based upon the record, it is fair to say McCoy=s goal
was to have the trial court dismiss the indictment.








                                                     D. Prejudice To The Accused

In Barker, the Court identified
three purposes behind the speedy-trial right: 
"(i) to prevent oppressive pretrial incarceration;  (ii) to minimize anxiety and concern
of the accused;  and (iii) to limit the
possibility that the defense will be impaired."  Id. at 532-33.   In considering the factor of prejudice,
moreover, the court of criminal appeals does not require proof of "actual
prejudice," but only "some showing" that the delay has been
prejudicial.  Munoz, 991 S.W.2d at 826; Phillips, 650 S.W.2d at 401.  Of these subfactors "the most serious is
the last, because the inability of a defendant adequately to prepare his case
skews the fairness of the entire system." 
Munoz, 991 S.W.2d at 826 (quoting Barker, 407 U.S. at
532-33).  When a defendant makes a
"prima facie showing of prejudice," the State carries "'the
obligation of proving that the accused suffered no serious prejudice beyond
that which ensued from the ordinary and inevitable delay.'"  Munoz, 991 S.W.2d at 826 (quoting Ex
parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

                                             1.
Oppressive Pretrial Incarceration









After the alleged assault, McCoy
experienced two major changes to his inmate status.  First, TDCJ officials held an administrative
hearing and told him that he could not accumulate good time for fifteen months.  Second, TDCJ put him in administrative segregation
and transferred him from the McConnell Unit in Beeville to the Estelle Unit in
Huntsville.  His incarceration at Estelle
was more restrictive than at McConnell. 
For example, at Estelle his recreation was limited to twice a week, his
food portions were smaller,[5]
and visitations were restricted to once a month.[6]  We conclude McCoy suffered some oppressive
pretrial incarceration.[7]

                                                         2.
Anxiety and Concern

Considering the severity of the
allegations against McCoy, we expect him to experience a certain amount of
anxiety while he waited for trial.  See
Thompson v. State, 983 S.W.2d 780, 785 (Tex. App.BEl Paso
1998, pet. ref=d). 
However, it was not until after November 7, 2000 that McCoy's anxiety
could have begun, because before then he was not under indictment.  See Phillips, 650
S.W.2d at 401.  After he was
indicted, he started having problems with his nerves and stomach.  He took Zantac to help these problems.  There was only a five and one-half month
delay between the indictment and the trial setting, and therefore, prejudice,
if any, was minimal.








                                                        3.
Impairment of Defense

McCoy argues that denial of his right to a
speedy trial resulted in two of his co-defendants, Steven Dunn and Jason
Wimberly, being unavailable to testify on his behalf.  He asserts that after the alleged offense, Dunn
and Wimberly were released on parole.[8]  When the accused contends that he was unable
to find witnesses because of the undue delay of his trial, this contention will
amount to some showing that the delay has been prejudicial if the accused shows
that: (1) the witnesses are unavailable; (2) their testimony might be material
and relevant to his case; and (3) he has exercised due diligence in his attempt
to find them and produce them for trial. 
Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); Meyer
v. State, 27 S.W.3d 644, 650 (Tex. App.BWaco
2000, pet. ref=d).








Even assuming that McCoy met the first two
criteria, he has not shown diligence in procuring the witnesses.  McCoy has not shown that he was prevented
from informing personnel at either the McConnell or Estelle Units that Wimberly
and Dunn were witnesses and that he or someone else needed to communicate with
them in order to get the names and addresses of their friends and relatives so
that he could find them in case TDCJ paroled them.  Further, after McCoy was indicted, Noel Reese
was appointed to represent him.  McCoy
testified that he wrote Reese a letter,[9]
but the record does not reflect that he told Reese that Dunn and Wimberly were
witnesses and that someone needed to interview them and get the names and
addresses of their family and friends so that he could find them in case these
witnesses were paroled.

On February 5, 2001, nearly three months
after McCoy was indicted, Reese withdrew as McCoy=s
attorney.  That same day, attorney Roger
Bellows was appointed to represent him. 
McCoy=s
testimony was that he told Bellows to locate Wimberly and to file a motion for
an investigator.  At that point, Bellows
could not find Wimberly.  Bellows filed a
Request for Approval of Investigative Expenses; however, the order was neither
granted nor denied.  Because McCoy cannot
show that he was diligent in his attempts to locate Dunn and Wimberly, he
failed to establish one of the essential elements necessary to prevail on the
prejudice analysis.  See Harris, 489 S.W.2d at 308. We weigh this factor against him.

McCoy also argues that denial of his right
to a speedy trial resulted in the loss of his written statement.  After the alleged assault, a
gang-intelligence officer interviewed McCoy about what had happened.  He gave the officer a written statement.  When counsel asked him, AAnd have
you been provided a copy of that?@  He
replied, ANo, sir,
they, they now say it doesn=t exist.@  McCoy does not say how his written statement
would help him prepare his defense. 
Moreover, he does not argue the delay caused him a lapse of memory to
the extent that he no longer remembers what happened.  In fact, McCoy denied assaulting an officer. 

                                                 E. Balancing The Barker Factors








Considering the aforementioned factors and
applying the Barker balancing test, we conclude McCoy was not denied his
right to a speedy trial.  The delay was
presumptively prejudicial, but not excessive. 
McCoy has failed to demonstrate that he promptly or persistently
asserted his speedy-trial right.  McCoy
has not shown that the delay has impaired his defense to the extent that he
cannot adequately prepare his case. 
Though he was under some anxiety while waiting for his trial, this is
insufficient to cause the prejudice prong to weigh in his favor.  Nothing in the record shows that the State
deliberately delayed his trial.  Further
the prejudice suffered by McCoy was minimal, and he suffered no serious
prejudice beyond that which ensued from the ordinary and inevitable delay.  We hold that McCoy was not denied a speedy
trial.  See Munoz,
991 S.W.2d at 822 (seventeen and one-half month delay not violative of
speedy-trial rights).  We overrule
the point of error.

                                                                 IV. Conclusion

We AFFIRM that part of the trial court=s order
which denies dismissal for non-speedy trial. 
We REVERSE that part of the order which dismisses the case for
preindictment delay.  We REMAND the case
to the trial court with instructions to reinstate the indictment.

 

______________________________

J.
BONNER DORSEY,

Justice

 

Publish.

Tex.
R. App. P. 47.3(b).

 

Opinion delivered and
filed

this 5th day of December,
2002.











[1]This
statute provides:

 

When
a defendant has been detained in custody or held to bail for his appearance to
answer any criminal accusation before the district court, the prosecution,
unless otherwise ordered by the court, for good cause shown, supported by
affidavit, shall be dismissed and the bail discharged, if indictment or
information be not presented against such defendant on or before the last day
of the next term of the court which is held after his commitment or admission
to bail or on or before the 180th day after the date of commitment or admission
to bail, whichever date is later.

 

Tex. Code Crim. Proc Ann. art. 32.01 (Vernon Supp. 2002).





[2]The
Moore court said that:  AIt
is extraordinarily difficult to show prejudice arising from a delay in an
indictment that falls within the applicable statute of limitations period.@  Moore, 943 S.W.2d at 128 (citing United
States v. Martinez, 77 F.3d 332, 335‑37 (9th Cir.1996)).





[3]In
Lovasco, a seventeen-month delay occurred between the time
that the prosecutors received the information upon which they ultimately
indicted the accused and the time that he was actually indicted.  The prosecutors argued that the delay
occurred because they thought the crime may have involved other people.  The Supreme Court stated the Due Process Clause
does not permit courts to Aabort
criminal prosecutions simply because they disagree with a prosecutor's judgment
as to when to seek an indictment. 
[P]rosecutors are under no duty to file charges as soon as probable
cause exists but before they are satisfied they will be able to establish the
suspect's guilt beyond a reasonable doubt.@  Lovasco, 431 U.S. at 790‑791.

 





[4]The
trial court held one hearing at which time it heard motions to dismiss from
both Brian McCoy and a co-defendant, Kenneth L. Williams.  The State=s
attorney gave the same testimony for McCoy and Williams.





[5]McCoy
explained that the reason he received smaller food portions at the Estelle Unit
was because he was less active.  At the
McConnell Unit he was in the general prison population up to the time of the
alleged incident.





[6]McCoy
explained that at the McConnell Unit he was allowed weekly visitation, and
because his family lived in Corpus Christi, they had a short distance to travel
when visiting him.  The Estelle Unit is
much further from Corpus Christi, and thus, his family had to travel a lot
further to visit him.  In addition, his
visitation at the Estelle Unit was limited to every other week.  But because the Estelle Unit only had five
visitation booths for 600 people, he had visitation once a month.





[7]Although
McCoy=s incarceration
was oppressive, we cannot necessarily say the State was responsible for this
incarceration.  Prior to the alleged
offense, TDCJ had classified him as a disruptive gang member.  On cross-examination, the State=s
attorney asked him, AAnd when you=re
classified or when they are classified in disruptive groups, are those
individuals placed in administrative segregation for their protection and other
individual=s protection,
also?@  He replied, AThat=s
usually what happens.@





[8]The
appellate record does not show when TDCJ paroled Dunn and Wimberly.





[9]McCoy
testified that in his letter to Reese, he asked Reese to get him the Ainitial
report@, an
audiocassette of a major case disciplinary hearing, and a videocassette Aof
when we were taken in handcuffs. . . .@