Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
THE STATE OF TEXAS,                                )                  No. 08-04-00125-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  34th District Court
)
JOSE LUIS URENDA,                                       )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 980D04641)

O P I N I O N

            The State of Texas appeals from an order dismissing an indictment for violation of the
defendant’s right to a speedy trial. See Tex.Code Crim.Proc.Ann. art. 44.01(a)(1)(Vernon Pamph.
2004-05). We reverse.
FACTUAL SUMMARY
            On May 12, 1998, detectives in the narcotics division of the El Paso Police Department
received information that a white van contained drugs. Detectives found the van in a grocery store
parking lot and set up surveillance. A blue Ram Charger, driven by Appellee, Jose Luis Urenda,
parked several spaces away from the white van. Moments later, Jorge Castillo arrived in an LTD. 
Urenda and Castillo opened the white van and moved several duffle bags from the van to the trunk
of the LTD. Castillo drove away in the LTD and Urenda drove away in the white van, leaving the
Ram Charger in the parking lot. The surveillance continued with one group of officers following
the white van and another group following the LTD. When Castillo committed a traffic violation,
the officers stopped the LTD. Castillo consented to a search of his vehicle and the officers found
100 pounds of marihuana. 
            The officers following Urenda observed him drive into an alley where he parked the van and
met Luis Bouche. Urenda and Bouche crossed the street and got into a Suburban. Bouche drove the
Suburban and Urenda sat in the front passenger seat. The officers followed the Suburban to a
residence on McKinley which both Bouche and Urenda entered. After a short time inside of the
residence, Urenda and Bouche exited carrying duffle bags which they put in the Suburban. Bouche
committed a traffic violation and a marked police unit stopped them. Bouche consented to a search
of the Suburban and the officers discovered several duffle bags that smelled like marihuana. Urenda
was arrested on an outstanding warrant. 
            Other police officers had continued to maintain surveillance on the white van parked in the
alley. During a subsequent search of the McKinley residence, officers found more marihuana, a
large amount of money, and the keys to the white van. As they approached the van, the officers
could smell a strong odor of marihuana emanating from inside of the van and they could see in plain
view what appeared to be marihuana bundles in the rear of the van. They searched the van and found
1,200 pounds of marihuana. 
            That same day, Urenda was charged with possession of marihuana. A grand jury indicted
him on July 16, 1998. Urenda hired counsel, Ron Henry and Joe Vasquez, and filed a written waiver
of arraignment on August 21, 1998. Urenda, who had been released on $100,000 bond two days
after his arrest, remained free on bond.
            Over the next several years, from September of 1998 through July of 2003, the trial court
repeatedly set Urenda’s case for pretrial hearings, including hearings on Urenda’s motion to suppress
evidence, and for jury trial, but Urenda consistently requested and obtained continuances. More
specifically, the case was set for pretrial hearing on Urenda’s motion to suppress on seventeen
occasions, but the hearings were continued at Urenda’s request. The case was also set for jury trial
on eleven occasions, but Urenda obtained continuances of those settings, sometimes due to
scheduling conflicts, other times because defense counsel requested a hearing on the motion to
suppress, and in other instances, because defense counsel set the matter for a plea rather than trial. 
The State did not ask for any continuances. 
            The State and Urenda’s attorneys engaged in good faith plea negotiations throughout the
pendency of the case. Initially, the State’s offer involved imprisonment. Urenda’s case was set for
entry of a guilty plea on several occasions, but Urenda never entered a plea of guilty and his case had
to be re-set. Later, in early 2003, the State dropped its offer to a ten-year probated sentence, and
Urenda’s case was again set for a guilty plea on June 9, 2003. Urenda refused the State’s offer and
obtained new counsel, Eduardo Lerma, on June 6, 2003. 
            Urenda, through counsel, filed a new motion to suppress on June 13, 2003. On July 18,
2003, he filed a motion to dismiss for failure to provide a speedy trial. The trial court conducted the
suppression hearing on August 19, 2003, but continued it until September 12, 2003.


 A visiting
judge, the Honorable Dick Alcala, was assigned to hear that motion, but Urenda filed an objection
to the visiting judge on September 11, 2003. Thus, the suppression hearing was not heard on
September 12, 2003. Judge Alcala overruled the visiting judge objection,


 but Urenda subsequently
filed a motion to recuse Judge Alcala based on a challenge to the assignment of visiting judges to
the Impact Court. Judge Alcala voluntarily recused himself. The Honorable Eduardo Marquez was
assigned to hear the case. Judge Marquez set the suppression hearing for October 28, 2003, but
Urenda’s counsel could not attend because of a scheduling conflict so on October 15, 2003, the court
conducted a hearing on what it construed as a motion for a continuance by Urenda. That same date,
Urenda filed a motion re-urging his right to a speedy trial and seeking dismissal. The suppression
hearing took place on December 19, 2003. By written order signed February 9, 2004, the trial court
denied the motion to suppress. 
            On February 24, 2004, the trial court conducted a hearing on Urenda’s motion to dismiss for
failure to provide him with a speedy trial. Urenda testified that his former attorney did not keep him
apprised of the status of his case. On one occasion, Urenda asked Mr. Henry what was taking so
long. Counsel replied that they had to work around his busy schedule. Urenda changed attorneys
because he did not want to enter a guilty plea but instead wanted a trial. He only told his attorney
one time that he wanted a trial. He admitted that although he had met with his attorneys about “a
hundred times,” he had never told them he wanted a speedy trial.
            The court granted the motion by a written order signed on May 10, 2004. The trial court also
entered findings of fact and conclusions of law. In those findings, the court concluded that Urenda
had not consented to the continuances obtained by defense counsel. Further, the court found that the
former attorneys were ineffective as a result of seeking continuances over Urenda’s objections and
request for a speedy trial. The State timely filed its notice of appeal. 
SPEEDY TRIAL
            In its sole issue on appeal, the State complains that the trial court abused its discretion when
it dismissed the indictment for failure to provide a speedy trial. The right to a speedy trial is
guaranteed by the Sixth Amendment to the United States Constitution. Barker v. Wingo, 407 U.S.
514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972); Ramirez v. State, 897 S.W.2d 428, 431
(Tex.App.--El Paso 1995, no pet.). When analyzing a trial court’s decision to grant or deny a speedy
trial claim, we must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3)
whether the defendant asserted his speedy trial rights; and (4) any resulting prejudice to the
defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2191; Emery v. State, 881 S.W.2d 702, 708
(Tex.Crim.App. 1994). None of the four factors alone is a necessary or sufficient condition to
finding a deprivation of the right to a speedy trial. Barker, 407 U.S. at 533, 92 S.Ct. at 2193.            We apply a bifurcated standard of review: an abuse of discretion standard for the factual
components, and a de novo standard for the legal components. Zamorano v. State, 84 S.W.3d 643,
648 (Tex.Crim.App. 2002). This means that we independently weigh and balance the Barker factors,
but we presume the trial court resolved any disputed fact issues in a manner that supports its ruling. 
Zamarano, 84 S.W.3d at 648; State v. Munoz, 991 S.W.2d 818, 821 (Tex.Crim.App. 1999).
Length of Delay
            The length of the delay is measured from the time the defendant is arrested or formally
accused. Shaw v. State, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003); Emery, 881 S.W.2d at 708. 
To trigger a speedy trial analysis, the defendant has the burden of first demonstrating a delay of
sufficient length to be considered presumptively prejudicial under the circumstances of the case. 
Barker, 407 U.S. at 530, 92 S.Ct. at 2192; Emery, 881 S.W.2d at 708. The defendant meets his
burden by showing that the interval between accusation and trial has crossed the threshold dividing
ordinary delay from presumptively prejudicial delay. Doggett v. U.S., 505 U.S. 647, 651-52, 112
S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992). Only then does it become necessary to consider the other
three factors in the Barker analysis. Emery, 881 S.W.2d at 708; Lott v. State, 951 S.W.2d 489, 493
(Tex.App.--El Paso 1997, pet. ref’d). In general, delay approaching one year is sufficient to trigger
consideration of all the Barker factors. Shaw, 117 S.W.3d at 889.
            Here, the delay between indictment and dismissal was five years and ten months and is
sufficient to trigger an analysis of the remaining Barker factors. See Shaw, 117 S.W.3d at 889. 
Further, the delay stretched well beyond the bare minimum needed to trigger judicial examination
of the speedy trial claim. Consequently, this factor weighs heavily in favor of finding a violation of
Urenda’s right to a speedy trial. Dragoo v. State, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003). 
Reason for Delay
            The State has the initial burden of assigning reasons to justify a lengthy delay. Dragoo, 96
S.W.3d at 314; Emery, 881 S.W.2d at 708. In examining the reasons for the delay, we accord
different weights to various reasons. Barker, 407 U.S. at 531, 92 S.Ct. at 2192; Dragoo, 96 S.W.3d
at 314. A deliberate attempt to delay the trial in order to hamper the defense should be weighed
heavily against the State. Barker, 407 U.S. at 531, 92 S.Ct. at 2192; Emery, 881 S.W.2d at 708. 
Valid reasons justify the delay and are not weighed against the State at all. Barker, 407 U.S. at 531,
92 S.Ct. at 2192. And delay that is attributable in whole or in part to the defendant may constitute
a waiver of the speedy trial claim. Munoz, 991 S.W.2d at 822. When the record is silent as to the
reason for the delay, we may presume neither a valid reason nor a deliberate attempt to prejudice the
defense. Dragoo, 96 S.W.3d at 314.
            The State met its burden by producing substantial evidence showing that the overwhelming
majority of the six-year delay is attributable to ongoing plea negotiations, continuances and re-sets
obtained by the defense, Urenda’s decision to obtain a new attorney who required time to prepare
a defense, and his objection to the visiting judge assigned to his case. These reasons for the delay
are not weighed against the State. See Munoz, 991 S.W.2d at 824 (ongoing good faith plea
negotiations is a valid reason for delay and is not weighed against the State); Shaw, 117 S.W.3d at
890 (continuances obtained by the defense not weighed against the State); Halbert v. State, 881
S.W.2d 121, 127 (Tex.App.--Houston [1st Dist.] 1994, pet. ref’d)(defendant changed attorneys
causing delay, not weighed against State); Holmes v. State, 938 S.W.2d 488, 490-491 (Tex.App.--Texarkana 1996, no pet.)(in speedy trial analysis, re-sets at defendant’s request chargeable to
defendant; defendant’s recusal of sitting judge causing delay not weighed against State). 
            Rather than following a large body of case law which requires that this factor be weighed
heavily against Urenda, the trial court instead blamed the State for not objecting to the continuances
sought by defense counsel. The State is not obligated to object to the continuances sought by the
defense in order to have this factor weigh against the defendant. While the State has the burden of
explaining the delay, it is not responsible for the actions of the defendant which result in a delay of
the proceedings. 
            The trial court also concluded that Urenda had been denied the effective assistance of counsel
by his first two attorneys, and therefore, the actions of his attorneys in causing the delay could not
be imputed to or held against him. The trial court reached this conclusion without applying the
standard enunciated in Strickland v. Washington and without any evidence regarding the rationale
or reasoning behind counsel’s decisions.
            The proper standard for determining claims of ineffective assistance under the Sixth
Amendment is the two-step analysis adopted by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988
S.W.2d 770, 771-72 (Tex.Crim.App. 1999). Under the first prong, the defendant must show that
counsel’s performance was deficient, to the extent that counsel failed to function as the “counsel”
guaranteed by the Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). 
Under the second prong, the defendant must establish that counsel’s deficient performance
prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Jackson,
877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that
but for counsel’s unprofessional errors, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771. 
When we review a claim of ineffective assistance of trial counsel, we must indulge a strong
presumption that counsel’s conduct falls within the wide range of reasonable, professional
assistance, and the appellant must overcome the presumption that the challenged conduct can be
considered sound trial strategy. Jackson, 877 S.W .2d at 771. If the record is silent as to the facts,
circumstances, and rationale behind an attorney’s particular course of action, we are compelled to
find that the defendant did not rebut the presumption that it was a reasonable course of action. See
Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). Failure to make the required showing
of deficient performance defeats the ineffectiveness claim. Id. 
            An attorney’s decision to seek a continuance is a matter of trial strategy. The burden was on
Urenda, not the State, to establish by a preponderance of evidence that seeking continuances and
delaying a jury trial was not a sound trial strategy. The record is silent with respect to counsel’s
motivation or rationale for delaying the case. When the record does not show counsel’s reasons for
requesting a continuance, a court may not speculate and must rely on the presumption that
counsel’s action was based on trial strategy. See Brown v. State, Nos. 2-02-442-CR, 2-02-443-CR,
2003 WL 21940905, at *2 (Tex.App.--Fort Worth Aug. 14, 2003, pet. ref’d)(not designated for
publication)(where record does not show counsel’s reasons for requesting continuance, appellate
court may not speculate and must rely on presumption that counsel’s action was based on sound trial
strategy). To conclude that trial counsel’s representation was deficient without a proper record
exploring counsel’s trial strategy would require this court to speculate as to counsel’s motivation and
reasoning, which we may not do. The trial court erred in concluding that Urenda rebutted the
presumption that counsel provided effective assistance.
            Further, there is no evidence to support the trial court’s finding that trial counsel sought
continuances over Urenda’s objections or over an alleged request for a speedy trial. Urenda
specifically testified that he never told his attorneys that he desired a speedy trial. The only occasion
on which he told his attorney that he wanted a trial was when he rejected the final plea bargain offer
in June of 2003. Urenda waited five years before telling his attorneys that he wanted a jury trial, and
even then, he did not demand a speedy trial. In the absence of any factual support for the trial court’s
findings, the court’s conclusion that Urenda was denied the effective assistance of counsel is
unsupported by the record. We conclude that the delay must be held against Urenda. This factor
weighs heavily against finding a speedy trial violation.
Assertion of Right to Speedy Trial
            We next consider the defendant’s responsibility to assert his right to a speedy trial. Barker,
407 U.S. at 531, 92 S.Ct. at 2192. Assertion of the right is entitled to strong evidentiary weight in
determining whether the defendant was deprived of the right. Id. at 531-32, 92 S.Ct. at 2192-93. 
This failure weighs more heavily against the defendant as the delay gets longer; the longer the delay,
the more likely a defendant who really wants a speedy trial would take some action to obtain it. 
Dragoo, 96 S.W.3d at 314. Conversely, a defendant’s failure to assert his right in a timely and
persistent manner indicates strongly that he did not really want a speedy trial. Barker, 407 U.S. at
529, 532, 92 S.Ct. at 2193. Seeking a dismissal rather than a trial may attenuate the strength of a
speedy trial claim. Phillips v. State, 650 S.W.2d 396, 401 (Tex.Crim.App. 1983).
            Here, Urenda did not assert his right to a speedy trial for five years, and even then, he sought
dismissal rather than a trial. Urenda’s motivation in requesting a dismissal rather than a prompt trial
is relevant. See Phillips, 650 S.W.2d at 401. Because Urenda waited five years to assert his right
to speedy trial and he requested dismissal rather than a prompt trial, his actions suggest that he did
not really want one. See Barker, 407 U.S. at 529, 532, 92 S.Ct. at 2193; Dragoo, 96 S.W.3d at 314.
As the Court of Criminal Appeals observed in McCarty v. State, “[I]t is fair to say his prime object
was not to gain a speedy trial, but was an attempt to have the charge against him dismissed.” 
McCarty v. State, 498 S.W.2d 212, 215 (Tex.Crim.App. 1973). This factor also weighs heavily
against finding a speedy trial violation.
Prejudice Resulting from Delay
            Finally, we must determine whether Appellant suffered prejudice as a result of the delay. In
some cases, the delay may be so excessive so as to be presumptively prejudicial. Guajardo v. State,
999 S.W.2d 566, 570 (Tex.App.--Houston [14th Dist.] 1999, pet. ref’d), citing Doggett v. United
States, 505 U.S. 647, 654-57, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). A four-year delay is
presumptively prejudicial. Zamarano, 84 S.W.3d at 654. However, a defendant’s acquiescence in
that delay attenuates the presumption, and as with any legal presumption, it can be overcome. Shaw,
117 S.W.3d at 890; Dragoo, 96 S.W.3d at 315. Further, even in the case where the delay is
presumptively prejudicial, the defendant must nevertheless show that he has been prejudiced by the
delay. Id. Once the defendant has made such a showing, the burden shifts to the State to refute it. 
Id.
            Prejudice must be assessed in light of the interests which the speedy trial right was designed
to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of
the accused; and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at
532, 92 S.Ct. at 2193. Of these three, the most serious is the last because the inability of the
defendant to prepare a defense skews the fairness of the entire system. Id. Affirmative proof of
prejudice is not essential to every speedy trial claim because excessive delay presumptively
compromises the reliability of a trial in ways that neither party can prove or even identify. Doggett,
505 U.S. at 655, 112 S.Ct. 2686.
            While the six-year delay is presumptively prejudicial, nearly all of the delay is attributable
to the defense. Therefore, the presumption of prejudice is significantly attenuated. When we
examine the prejudice factors identified by Barker, we conclude that Urenda failed to establish
prejudice. Because Urenda has remained free on bond throughout the pendency of his criminal case, 
we are not concerned with oppressive pretrial incarceration. At the hearing, Urenda testified that he
suffered anxiety during the pendency of his criminal case. Yet he offered no evidence that the delay
had caused him any unusual anxiety or concern, i.e., any anxiety or concern beyond the level
normally associated with being charged with a felony sexual crime. See Shaw, 117 S.W.3d at 890. 
Finally, with respect to the third interest, we must presume that the lengthy delay adversely affected
Urenda’s ability to defend himself, but this presumption is substantially weakened by Urenda’s
actions in not only acquiescing in the delay but actually having caused the majority of it. See Shaw,
117 S.W.3d at 890; Dragoo, 96 S.W.3d at 315.
            Urenda’s efforts to show prejudice at the hearing were ineffectual. Defense counsel argued
that Urenda’s defense had been prejudiced by the delay because he not been able to obtain the traffic
citation issued to Luis Bouche or the police radio broadcasts from his arrest. Defense counsel argued
that this evidence was relevant to the suppression motion, a matter which had already been heard and
denied, because it could be used to illustrate that the officers lacked probable cause and were lying
about the reason for stopping Bouche. Defense counsel did not seek discovery of the recorded
dispatch communications until after the first suppression hearing, and even then, he did not obtain
a ruling on his motion. Defense counsel did not attempt to discover the traffic citation


 until after
the second suppression hearing had concluded. Further, he did not obtain a ruling on his motion. 
Under these circumstances, Urenda did not show that the items were lost due to the delay, and
therefore, he has not shown prejudice. Consequently, this factor weighs against finding a violation
of his right to a speedy trial. See Shaw, 117 S.W.3d at 891 (defendant failed, in context of speedy
trial claim, to demonstrate any actual prejudice arising from 38-month delay between indictment and
second trial; defendant was out on bond at all relevant times, he offered no evidence that delay had
caused him any unusual anxiety or concern, and presumption of prejudice was extenuated by
defendant’s longtime acquiescence in the delay).
Weighing the Barker Factors
            The only factor weighing heavily in favor of a speedy trial violation is the excessive length
of the delay. The second and third factors, however, weigh heavily against finding a speedy trial
violation. The majority of the delay is attributable to Urenda, who did not assert his right to a speedy
trial for five years and even then sought dismissal, not a prompt trial. While there is a presumption
of prejudice due to the excessive delay, it is extenuated because Urenda caused the delay. Because
Urenda did not establish any actual prejudice resulting from the delay, the fourth factor also weighs
against Urenda. Consequently, we conclude that the weight of the four factors, balanced together,
is against finding a violation of Urenda’s right to a speedy trial. See Barker v. Wingo, 407 U.S. at
534, 92 S.Ct. 2182 (where defendant was not seriously prejudiced by five-year delay between arrest
and trial and he did not really want a speedy trial, his right to a speedy trial was not violated); Shaw,
117 S.W.3d at 891 (delay of thirty-eight months between indictment and defendant’s second trial did
not violate constitutional right to speedy trial; while delay was excessive and State offered no valid
reason for most of delay, defendant failed to assert speedy trial right until twenty-nine months after
first trial and waited another six months before seeking a hearing to enforce that right, and he also
failed to demonstrate any prejudice resulting from delay); Dragoo, 96 S.W.3d 308 (where defendant
demonstrated no serious prejudice by 3 1/2 year delay between arrest and trial and he waited until
just before trial to assert his right to a speedy trial, his right to a speedy trial was not violated);
Phipps v. State, 630 S.W.2d 942, 946 (Tex.Crim.App. 1982)(where defendant demonstrated no
prejudice by four-year delay between arrest and trial and he waited until one month before trial to
assert his right to a speedy trial, his right to a speedy trial was not violated). The State’s sole issue
is sustained and the trial court’s order dismissing the indictment is reversed. The cause is remanded
to the trial court for a speedy trial.


August 4, 2005                                                            
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)