



## MEMORANDUM OPINION

No. 04-08-00919-CR

Michael **JOHNSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-2356
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
        Karen Angelini, Justice
        Marialyn Barnard, Justice

Delivered and Filed:  August 18, 2010

AFFIRMED

Without the benefit of a plea bargain, appellant Michael Johnson entered a plea of guilty to the offense of aggravated robbery, and agreed to an affirmative deadly weapon finding. The trial court found Johnson guilty, made an affirmative deadly weapon finding, and sentenced Johnson to confinement in the Texas Department of Criminal Justice-Institutional Division for twenty-five years.  Johnson's appointed appellate counsel filed a brief in which she asserted she could find no arguable grounds for appeal.  *See Anders v. California*, 386 U.S. 738 (1967).

Thereafter, Johnson filed a brief on his own behalf, and therein contends: (1) he was denied the right to a speedy trial, (2) he was erroneously denied a "lesser included charge on robbery" pursuant to the test established in *Royster v. State*, 622 S.W.2d 442 (Tex. Crim. App. 1981), and (3) the evidence was legally and factually insufficient to find him guilty of the offense of aggravated robbery with a deadly weapon. We affirm.

## BACKGROUND

Johnson pled guilty, and stipulated to the evidence against him. We have derived the background facts from the stipulated evidence, which consists of a police report and a transcription of a statement Johnson gave to police after his arrest.

On December 14, 2006, John Knight was working in his garage on an antique pickup truck. Knight heard someone walking along the side of his house, and when he looked up, he saw a man standing in his garage. The man pointed a shotgun at Knight. A second man, who had a windbreaker partially covering his face, walked into the garage. The man with the shotgun told Knight to give him the keys to the truck and his money. When Knight advised the man that he was "broke," the gunman forced him to empty his pockets and prove his wallet was empty. Assured the victim had no money, the gunman again demanded the truck keys, which Knight tossed toward the gunman. The keys fell on top of a lawn mower, and were picked up by the man with the windbreaker. The gunman told the man with the windbreaker "to go start the truck, Cuz," which he did. The truck taken by the robbers was not the antique pickup truck, but a 1998 Chevrolet pickup truck, which was parked in the driveway. As the robbers left, the gunman advised Knight not to call police or tell anyone or Knight would be killed. The gunman stated "his people" knew where Knight lived and would come back and kill Knight if he told.

Despite the gunman's warnings, Knight called the police. Deputies from the Bexar County Sheriff's Department arrived and took a report. Police subsequently recovered the 1998 Chevrolet pickup truck, but it had been driven into a tree. Ultimately, Knight identified Johnson as the gunman from a photographic array prepared by law enforcement.

After he was identified by Knight, police interviewed Johnson and transcribed his statement. Johnson admitted taking the pickup truck, and threatening to kill Knight if he refused to turn over the keys or called police, but Johnson denied having a shotgun. Johnson was indicted by a grand jury for the offense of aggravated robbery with a deadly weapon. He pled guilty without a plea bargain agreement, and the trial court found him guilty and sentenced him to confinement in the Texas Department of Criminal Justice–Institutional Division for twenty-five years.

## SPEEDY TRIAL

Johnson first contends he was denied the right to a speedy trial in contravention of the Sixth Amendment of the United States Constitution and Article I, section 10 of the Texas Constitution. Johnson argues that his incarceration for almost two years from the time of his arrest to the day of sentencing violated his constitutional rights.

Under the Sixth Amendment to the United States Constitution, an accused is guaranteed the right to a speedy trial.[1] *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). This right attaches once a person becomes an "accused," i.e., when he is arrested or charged. *Id.* Appellate courts analyze speedy trial claims "on an ad hoc basis," weighing and then balancing the four factors set forth in *Barker v. Wingo*: (1) the length of the delay, (2) the reason for the

---

[1]The right to a speedy trial is also guaranteed under Article I, section 10 of the Texas Constitution. TEX. CONST. art. I, § 10. Although the right secured by the Texas Constitution is independent of the right guaranteed by the Sixth Amendment, the Texas Court of Criminal Appeals has held the analysis for claims under the Texas Constitution is the same as for claims under the United States Constitution. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

delay, (3) the assertion of the right, and (4) the prejudice to the accused. *Id.*; *see Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Although the State has the burden to justify the length of the delay, the defendant must prove assertion of the right and demonstrate prejudice. *Cantu*, 253 S.W.3d at 281. The defendant's burden "varies inversely" with the State's degree of culpability for the delay. *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir.1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280-81.

The *Barker* analysis is triggered when the delay is sufficiently unreasonable so as to be "presumptively prejudicial." *Id.* at 281 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). Although there is no set time, a delay of four months is insufficient for presumptive prejudice, but a delay of seventeen months is sufficient. *Cantu*, 253 S.W.3d at 281 (citing *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) (holding four-month delay is not presumptively prejudicial); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) (holding seventeen-month delay is presumptively prejudicial)). If the court finds a presumptively prejudicial delay, it must analyze the speedy trial claim by first weighing the strength of each remaining factor, and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." *Cantu*, 253 S.W.3d at 281 (quoting *Barker*, 407 U.S. at 530). The factors are related and must be considered together along with any other relevant circumstances, and no one factor is either necessary or sufficient to find a speedy trial violation. *Cantu*, 253 S.W.3d at 281. Courts must therefore "engage 'in a difficult and sensitive balancing process' in each individual case." *Id.* (quoting *Barker*, 407 U.S. at 533).

Although Johnson contends he raised the speedy trial issue in the court below, the record does not support his contention. There is nothing in the record to establish Johnson raised a speedy trial allegation in the trial court. Accordingly, it could be argued he has waived his speedy trial complaint. *See Bridges v. State*, No. 02-08-356-CR, (Tex. App.—Fort Worth Feb. 11, 2010, pet. ref'd) (mem. op.) (not designated for publication); *see also Cantu*, 253 S.W.3d at 281 (holding defendant bears burden to assert right to speedy trial); *but see Barker*, 407 U.S. at 531 (holding failure to assert right to speedy trial will make it difficult for defendant to prove he was denied speedy trial); *Narvaez v. State*, 05-09-00039-CR, 2010 WL 924004, at *6 (Tex. App.—Dallas Mar. 16, 2010, no pet.) (same). However, even if we assume the complaint was not waived, an analysis of the *Barker* factors does not mandate reversal in this case.

The State concedes the delay in this case, which is measured from the date the defendant is formally accused or arrested, is presumptively prejudicial so as to trigger the *Barker* analysis. *See Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994) (citing *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). We agree. According to the stipulated evidence, Johnson was arrested and charged with aggravated robbery on December 15, 2006. He was thereafter indicted on March 13, 2007. He pled guilty on November 4, 2008, and was sentenced on December 8, 2008. Thus, by the time of the plea and sentence, almost two years had elapsed from the time Johnson was arrested, far longer than the seventeen-month delay found presumptively prejudicial in *Phillips*. *See* 650 S.W.2d at 399. Because the delay was beyond the minimum needed to trigger the *Barker* inquiry, this factor weighs heavily in favor of finding a violation of Johnson's right to a speedy trial. *See Zamorano v. State,* 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).

As to the second *Barker* factor, reason for the delay, the record contains no explanation for the delay. This is not surprising given that Johnson did not assert his right to a speedy trial in the court below–no hearing was necessary in the absence of a request. In the absence of explanation for a delay, the court is not to presume either a deliberate attempt to prejudice the defense or a valid reason for the delay. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). We hold the unexplained delay, while typically weighing in favor of a speedy trial violation, though not heavily, does not weigh in favor of a violation in this case. Because appellant did not assert his right to a speedy trial, there was no call for the State to provide any explanation for the delay. It would be unreasonable to hold a failure to provide an explanation for delay weighs against the State when it was the defendant's burden to assert the issue. Accordingly, we hold this issue weighs neither for nor against Johnson's right to a speedy trial.

We next consider Johnson's assertion, or lack thereof, of his right to a speedy trial. The record does not reflect that Johnson ever asserted his right to a speedy trial in the trial court; rather, it was only when he filed his appellant's brief in this court that he raised the issue. Assuming this failure does not amount to a waiver, the lack of a timely demand indicates strongly that Johnson did not really want a speedy trial and that he was not prejudiced by the lack of one. *See Dragoo*, 96 S.W.3d at 314 (citing *Barker*, 407 U.S. at 532). Moreover, the longer the delay, the more likely it is that a defendant desiring a speedy trial would have taken some action to obtain it. *Dragoo*, 96 S.W.3d at 314 (citing *Barker*, 407 U.S. at 532). Inaction therefore weighs more heavily against a violation the longer the delay becomes. *Id.* Given the absence of any evidence that Johnson asserted his speedy trial right in the court below, we hold this weighs heavily against finding a violation of his right to a speedy trial. *See id.*

Finally, when analyzing the prejudice to the defendant, the court must do so in light of the interests the right to a speedy trial was designed to protect: (1) freedom from oppressive pretrial incarceration, (2) mitigation of the anxiety and concern accompanying public accusation, and (3) avoidance of impairment to the accused's defense. *Cantu*, 253 S.W.3d at 285. Of these interests, the last is the most serious because a defendant's inability to prepare his defense affects the fairness of the entire system. *Id.* A defendant is not required to show actual prejudice of the protected interests; rather, he need only make some showing that he has been prejudiced by the delay. *Rangel*, 980 S.W.2d at 844 (citing *State v. Burckhardt*, 952 S.W.2d 100, 104 (Tex. App.—San Antonio 1997, no pet.)).

Although the record establishes Johnson was incarcerated for approximately two years–his request for a bond reduction was denied–given his failure to assert his right to a speedy trial below, Johnson obviously presented no evidence to the trial court with regard to the anxiety and concern he may have suffered or to any prejudice his defense may have suffered as a result of the delay. Given the absence of any evidence of prejudice, we hold this factor weighs against a speedy trial violation.

Having addressed the four *Barker* factors, we must now balance them. *See Cantu*, 253 S.W.3d at 280. Weighing in favor of finding a violation of Johnson's speedy trial right is the length of the delay, but weighing against finding a violation is Johnson's complete failure to assert his rights in the court below, and his failure to produce any evidence of prejudice. Accordingly, we hold the weight of the four factors, when balanced together, is against finding a violation of Johnson's right to a speedy trial, and we overrule his first point of error.

**JURY CHARGE ON LESSER INCLUDED OFFENSE**

In his second point of error, Johnson contends "the trial court erred in not applying the Roster [sic] test." *See Royster*, 622 S.W.2d at 444. In a line of cases described commonly as the *Royster-Rousseau* line of cases, the Texas Court of Criminal Appeals established a two-prong test for determining when a trial court should submit a jury charge on a lesser included offense. *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009); *see Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Royster*, 622 S.W.2d at 444. Before a trial court is required to submit to the jury a lesser included offense charge requested by the defendant, the trial court must find that the lesser included offense is within the proof necessary to establish the offense charged, and there is some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau*, 855 S.W.2d at 672. Clearly, *Royster* and its progeny are applicable only to jury trials, and Johnson has not cited this court to any authority to the contrary. Moreover, the law is clear that when a defendant waives his right to a jury trial and enters a guilty plea, as Johnson did in this case, the trial court is authorized to consider the evidence adduced at the guilty plea and find the defendant guilty as charged in the indictment, guilty of a lesser offense, or not guilty. *See Aldrich v. State*, 104 S.W.3d 890, 893 (Tex. Crim. App. 2003).

Johnson seems to contend, in the guise of a *Royster-Rousseau* complaint, that if he is guilty, he is guilty only of robbery because he consistently asserted to law enforcement that he did not have a shotgun and never pointed a shotgun at Knight. This complaint is in the nature of a sufficiency of the evidence complaint, not a jury charge complaint based on the absence of a lesser included offense charge. Accordingly, we hold this point of error presents nothing for our review, and we will consider the sufficiency complaint as presented in Johnson's third point of error.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE**

Finally, Johnson contends, despite his plea and agreement to the affirmative deadly weapon finding, the evidence is legally and factually insufficient to support his conviction for aggravated robbery with a deadly weapon. Johnson specifically argues the evidence was insufficient to establish he used or exhibited a shotgun during the course of the robbery because (1) he denied possessing or using a shotgun, and (2) the only evidence in the record is Knight's statement to police that Johnson had a shotgun and pointed it at him.

Johnson references the traditional standards of review applicable to legal and factual sufficiency challenges. *See, e.g., Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005) (holding that when reviewing evidence for legal sufficiency, appellate court reviews all of evidence in light most favorable to verdict to determine whether any rational trier of fact could have found essential elements of offense beyond reasonable doubt); *Watson v. State*, 204 S.W.3d 404, 414-25 (Tex. Crim. App. 2006) (holding that when reviewing evidence for factual sufficiency, appellate court reviews all of evidence in neutral light and sets aside verdict only if evidence is so weak that verdict is clearly wrong and manifestly unjust, or contrary evidence is so strong that standard of proof beyond reasonable doubt could not have been met). "However, these traditional standards do not apply to non-capital felony cases when the defendant enters a plea of guilty or nolo contendere." *Tijerina v. State*, 264 S.W.3d 320, 322 (Tex. App.—San Antonio 2008, pet. ref'd). The entry of a valid guilty plea "has the effect of admitting all material facts alleged in the indictment or other charging instrument." *Id*. Once a defendant enters a valid plea of guilty in a bench trial, the State is not required to prove guilt beyond a reasonable doubt. *Id*. Rather, the State is only required to support the guilty plea with evidence. TEX. CODE CRIM. PROC. art. 1.15 (Vernon 2005).

To sustain a guilty plea under article 1.15, the State must offer evidence to support the plea and the judgment to be entered. *Tijerina*, 264 S.W.3d at 323. The evidence must embrace each essential element of the charged offense. *Id.* Therefore, our sufficiency review following a plea of guilty is limited to determining whether the State introduced evidence embracing every essential element of the offense charged. *Id.*

Johnson was charged with aggravated robbery with a deadly weapon. In support of his guilt, the State introduced into evidence its Exhibit No. 1, which included the "Waiver, Consent to Stipulation of Testimony and Stipulations" sworn to by Johnson. In that document, Johnson swore he was the person named in the indictment, and that all of the allegations in the indictment occurred in Bexar County, Texas and were true. He also swore that on or about December 14, 2006, he "intentionally and knowingly . . . while in the course of committing theft of property and with intent to obtain and maintain control of said property, did intentionally and knowingly threaten and place John Knight in fear of imminent bodily injury and death . . . and . . . did use and exhibit a deadly weapon, to wit: A FIREARM." This is the language contained in the indictment. By swearing the allegations in the indictment were true, Johnson judicially confessed that he used and exhibited a deadly weapon, specifically a firearm, during the course of committing theft of property and placed Knight in fear of imminent bodily injury and death, i.e., he judicially confessed to aggravated robbery. "It is well settled that a judicial confession alone, is sufficient to sustain a conviction upon a guilty plea." *Id.* (quoting *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1979)). "In other words, a judicial confession satisfied the State's burden under article 1.15." *Id.*

Johnson's argument that the evidence is not sufficient because State's Exhibit No. 1 also contains his statement, in which he denied having or using a firearm, is without merit. At most,

State's Exhibit No. 1 contains conflicting evidence, and as this court stated in *Tijerina*, it is well-settled under Texas law that the judicial confession is alone sufficient to meet the requirements of article 1.15 and sustain a conviction following a valid guilty plea. 264 S.W.3d at 324. We therefore overrule Johnson's third point of error.

## CONCLUSION

Based on the foregoing, we overrule Johnson's points of error, and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish